## THE PERKINS-CAMPBELL COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 183.   Argued January 21, 1924.—Decided February 18, 1924.

1. Where an award, made under the Dent Act for expenses incurred under a war contract, was accepted, with payment, by the claimant, in full discharge of the obligations of the United States under the contract, reformation of the award is a prerequisite to recovery of additional compensation in the Court of Claims.   P. 218.
2. It is not a ground for reforming such an award that the claimant, before accepting it, was advised by army officers believed to be acting under directions of the board that examined the case, that acceptance would not waive further claim under the contract.   *Id.*
3. Allegations of a petition *held* insufficient as a basis for reforming an award on the ground of mutual mistake by the claimant and the United States.   *Id.*

57 Ct. Clms. 623, affirmed.

APPEAL from a judgment of the Court of Claims dismissing a petition on demurrer.

*Mr. Henry T. Hunt* and *Mr. Arlen G. Swiger,* for appellant, submitted.

*Mr. Geo. Ross Hull,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The Perkins-Campbell Co. filed its petition asking the reformation of an award made it under the provisions of the Dent Act of compensation for expenses incurred in the partial performance of a war contract for the manufacture of ambulance harness; and the allowance of addi-

tional compensation. This petition was dismissed on demurrer, without an opinion. 57 Ct. Clms. 623.

The material facts set forth in the petition and appearing from the exhibits are: On August 10, 1917, the Company entered into a contract with the War Department, designated as No. 2788, for the manufacture of 35,000 sets of ambulance harness. This contract was not executed in the manner prescribed by law. After the Company had delivered 3,000 sets of harness and incurred expenses for the manufacture of the full number, negotiations were had for a reduction of the contract to 20,000 sets. This resulted in a written offer by the Company to " allow 15,000 sets of this harness without expense to the Government with the understanding that we are to be allotted 10,000 dump cart harness ", at a specified higher price. On October 22, 1918, the Quartermaster General's Office wrote the Company that 15,000 sets of ambulance harness had been cancelled from its contract, and that in lieu of this cancellation an award had been made it for 10,000 sets of cart harness at the higher price, " on contract L-357-J," which was being prepared and would shortly be forwarded for signature. The next day the Quartermaster General's Office telegraphed: " Telegram referring to 10,000 dump cart harness received. Cancellation and award of 10,000 sets approved. Contract now before Review Board but has not been approved by them. Use your own judgment in cutting harness. Will notify you when contract is approved." The Company, expecting that the duly executed contract would follow shortly, but without intending, the petition avers, to surrender otherwise its right to deliver the 35,000 sets of ambulance harness, suspended the production of more than 20,000 sets of ambulance harness and proceeded to prepare for the manufacture of the cart harness " in so far as it might do so without risk of serious loss if the contract were not executed." In so doing it incurred expenses of more than

$70,000. Shortly after the Armistice, and before the new contract had been executed, the Company, at the request of the Quartermaster General's Office, suspended the further manufacture of both the ambulance and the cart harness.

After the passage of the Dent Act, 40 Stat. 1272, c. 94,—which authorized the Secretary of War to adjust claims for expenses incurred in connection with the prosecution of the war under "an agreement, express or implied", entered into in good faith but not executed as prescribed by law—the Company presented to the War Department Claims Board, the designated agent of the Secretary, two claims for compensation: one for all expenses incurred in the performance of contract 2788 for 35,000 sets of ambulance harness; and the other for expenses incurred under the "proposed contract L-357-J" for cart harness. Each was in the form prescribed for claims based on "agreements" reduced to contract form or otherwise established by written evidence.[1]

The Claims Board, in accordance with its rules of procedure,[2] made a certificate setting forth that an agreement had been entered into as shown by contract 2788, and, after this had been approved by the Company, forwarded the claim under this contract to a Zone Board for detailed examination. A certificate as to the agreement entered into under "Contract L-357-J", was made a week later.[3]

The Zone Board, deciding that the Company had surrendered its right to deliver 15,000 sets of the ambulance

---

[1] The petition does not set forth either of these claims, or show the steps taken in the prosecution of the claim as to the cart harness prior to the final award.

[2] Supply Circular No. 17, 1 Dec. War Dept., Bd. of Cont. Adjust., xlviii.

[3] This appears from the recitals in the final awards made under the two claims.

harness, rejected the claim on the basis of 35,000 sets, and " instructed " the Company to submit it on the basis of 20,000 sets only. The Company, in obedience to these " instructions ", revised its claim so as to exclude all expenses incurred as to more than 20,000 sets. And, the petition avers, a captain and a lieutenant attached to the Zone Board, " believed " by the Company to be acting under its direction, " instructed " the Company that it might accept an award based on its expenses for 20,000 sets without waiving its claim for those incurred for the additional 15,000 sets. The Zone Board, upon proof submitted as to 20,000 sets only, found the amount of compensation to which the Company was entitled and recommended payment. Pursuant to such recommendation, the Claims Board, in December, 1919, made an award to the Company under " Contract 2788." This award, after reciting that an agreement had been entered into on August 10, 1917, as set out in the certificate of the Board, awarded the Company, in addition to the payments for the ambulance harness that had been delivered,[4] and as remuneration for the expenses incurred in preparing to perform said agreement, the further sum of $80,385.15 " in full adjustment, payment, and discharge of said agreement." This award was accepted by the Company by written endorsement; and was duly paid. The petition avers, however, that although this award purported to be a settlement of all obligations of the Government under contract 2788, it " was not the intention of the claimant nor of the officers with whom the settlement covered by the award was negotiated to settle thereunder any claim of the claimant beyond 20,000 sets."

On the same day the Claims Board made the Company an award under " Contract L-357-J." This award after reciting that an agreement had been entered into on or

___

[4] $416,781.18, the value of 14,142 sets that had been delivered.

about October 22, 1918, the terms of which had been set out in a certificate of the Board, awarded the Company as remuneration for the expenses incurred in preparing to perform " said agreement," the sum of $71,705.76, in full adjustment and discharge of " said agreement." This award was also accepted by the Company by written endorsement; and was duly paid.

Meanwhile the Company had filed, in June, 1919, pursuant, as the petition avers, to " instructions " of the Zone Board, a claim with the Board of Contract Adjustment for the expenses incurred in the performance of the ambulance harness contract not included in the 20,000 sets. In March, 1920, the Board of Contract Adjustment decided that the United States, having paid the awards as to 20,000 sets of ambulance harness and the 10,000 sets of cart harness, was under no obligation to reimburse the Company for expenses as to the 15,000 sets of ambulance harness " which were eliminated " from the original contract. 4 Dec. War Dept., Bd. Cont. Adjust. 529, 531. This decision was affirmed by the Secretary of War, who found that the original order for 15,000 sets of ambulance harness " was cancelled with the consent of claimant without cost to the Government."

The petition prays that the court adjudge that the award made and accepted under contract 2788 did not express the intention of the parties and reform it so as to express their intention that it should constitute a settlement of that part only of the contract covering 20,000 sets of ambulance harness; and that the Company be awarded the further sum of $21,868.89 for expenses incurred in preparing to manufacture the 15,000 additional sets covered by the contract.

The demurrer to the petition is based upon the ground, among others, that it does not state facts sufficient to constitute a cause of action against the United States or entitle the Company to the relief prayed for.

Aside from any other question, it is clear that, under the averments of the petition, the Company is not entitled to the reformation of the award accepted by it in full discharge of the obligations of the United States under the original contract for the ambulance harness. The reformation of this award is clearly a prerequisite to any recovery for expenses incurred in reference to the 15,000 sets. The petition, however, shows no facts sufficient to require such a reformation.

The fact that the Company had been advised by a captain and a lieutenant " believed " to be acting under the directions of the Zone Board, that it might accept an award on the basis of 20,000 sets without waiving its claim as to the 15,000 additional sets, is, obviously, not a sufficient ground for reformation of the award which it subsequently accepted, deliberately, in " full discharge " of the contract. And the general allegation that neither the Company nor the officers with whom the settlement was negotiated intended to settle under the award any claim beyond 20,000 sets, is a mere conclusion of the pleader, at least in so far as the intention of the Government is concerned. The petition does not designate the officers referred to or show their authority to bind the United States in any respect whatever. And it does not aver that the award was in fact the result of any negotiation for settlement. On the contrary the award appears to have been an adjudication made by the Claims Board upon the facts, when it had before it the claim under the agreement as to the cart harness as well as that under the original contract for the ambulance harness. There is no averment that the Claims Board in making the award intended it as only a partial settlement of the claims under the contract for the ambulance harness, or that it was paid by the authorized agents of the United States with any such understanding.

Manifestly the averments of fact contained in the petition show no " mutual mistake of the parties which upon

well-established principles of equity jurisprudence requires the reformation of the contract, and certainly no such special circumstances . . . of fraud, duress, or oppression, as would necessarily require relief against a mistake of law." *Cramp* v. *United States,* 239 U. S. 221, 233.

The judgment of the Court of Claims is accordingly

*Affirmed.*