## HUDSON TRADING CO., Inc., v. UNITED STATES.*

Circuit Court of Appeals, Third Circuit. October 1, 1928.

No. 3719.

*Rehearing denied January 3, 1929.

Buffington, Circuit Judge, dissenting.

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., and Edna F. Rapallo, both of New York City, of counsel), for appellant.

James W. McCarthy, U. S. Atty., of Jersey City, N. J., and Harold F. Birnbaum, Sp. Asst. U. S. Atty., of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from an amended interlocutory decree limiting libelant's recovery to its pro rata share of the interest of the United States in the hull Aberfoil at the time the libel was filed, July 26, 1922.

Four libels were filed in the District Court, one by each of the following four libelants: The Hudson Trading Company, Inc., the Havana Central Railroad Company, Pedro Montardit y Maurie et al., and Alvara Crespo et al. Interlocutory decrees

were entered in each case, and the cases were all consolidated, and by agreement only one appeal was taken to this court.

The Aberfoil is a hull or vessel belonging to the United States Shipping Board, which holds title for the United States. Between October 11 and December 1, 1920, a cargo of 328 bundles of iron bars, containing 2,453 pieces, 2,296 lengths of iron pipe, 10 boxes of couplings, 41 boxes of bolts, and 4 boxes of rubber packing devices, was loaded upon the Aberfoil at the port of New Orleans to be transported to Havana, Cuba, and the freight of $2,552.97 was paid. The Aberfoil, however, did not proceed to Havana, but remained at New Orleans, and the cargo lay in her holds until July 23, 1921, "when it was removed by the libelant at its own expense in greatly damaged condition."

On or about December 3, 1920, while the cargo was in the holds of the Aberfoil, the Menge Marine Hardware & Supply Company, "upon the order of the owners of said vessel and agents of said owners, furnished certain supplies, materials, and equipment, and performed certain work upon the credit of said vessel," amounting in all to $3,264. Upon the failure of the owners to pay this bill, the Menge Company filed its libel in rem against the Aberfoil on January 26, 1921. She was seized by the United States marshal immediately thereafter, and kept under seizure in his custody for over nine months. The United States Shipping Board not only failed to oppose these proceedings in rem, but its chairman directed that the Aberfoil "be abandoned to the persons having liens against" her. Accordingly she was sold on October 25, 1921, three months and two days after the cargo had been removed, for $1,200.

Thereafter she came into the district of New Jersey in July, 1922, and the four libels mentioned above were filed against the United States as owner of the Aberfoil, under the provisions of the Act of March 9, 1920 (46 USCA §§ 741–752), to recover damages for delay and failure to transport the cargo as above stated from New Orleans to Havana, from October, 1920, until July 23, 1921, on the theory that the proceedings resulting in the sale of the Aberfoil on October 25, 1921, in New Orleans, were a nullity, and did not confer title upon the purchaser.

Judge Lynch presided at the trial, and held that the sale was without authority of law, that the vessel was still owned by the United States, that the sale by the marshal under order of the United States District Court for the Eastern District of Louisiana was void, and could be attacked collaterally, and that the libelant was entitled to damages. He referred the case to Edward O'Byrne, Esq., special commissioner, "to compute, ascertain and report" the damages of the libelant to the court. Neither the opinion nor decree stated the amount of damages nor as of what date they should be computed.

The United States, through the United States attorney for the district of New Jersey, gave notice of a motion before the District Court "to limit the total recovery against the respondent to the value of its interest in the hull Aberfoil on the 26th day of July, 1922, being the date on which said libels were filed, to direct the commissioner to ascertain the value of respondent's interest in said hull on said date." At the hearing, the court differently constituted held that the libelants were limited to the interest of the United States in the vessel at the time the libels were filed, but in a closing paragraph further said:

"It is not necessary to determine the merits of the controversy, but it is obvious that the government had no interest in the Aberfoil at the time the libels were filed, and whatever rights the libelants may have is against the remnants and surplus in the New Orleans district secured from the marshal's sale of the Aberfoil."

This statement inferentially, if not expressly, reversed the decree of Judge Lynch, in that it held the "sale" of the Aberfoil to be valid, and the United States was thus divested of its title to and interest in the vessel. But in its decree the court adjudged that the libelant was entitled to damages "to the extent of its pro rata share of the interest of the United States of America in the hull Aberfoil as of the 26th day of July, 1922," and referred the matter again to Edward O'Byrne, Esq., to compute the damages of the libelant and ascertain the interest of the United States in the Aberfoil on the date the libel was filed, without intimating, except in the portion of the opinion quoted above, what that interest was.

Thereupon the libelant appealed to this court from the decree of Judge Bodine, amending the decree of Judge Lynch. The libelant contends that it is entitled to the full amount of the damages it had sustained at the time the cause of action accrued. On the other hand, the United States contends that, if entitled to anything, the libelant is entitled to damages to the extent of its interest in the vessel at the time the libel was filed, and that it had no interest in the vessel at that time.

Three questions, therefore, are involved in this appeal: (1) Did the United States

District Court for the Eastern District of Louisiana have jurisdiction in the suit brought in that district, so as to make its decree of sale valid? (2) If it did not have, and the libelant is entitled to damages, is the United States entitled to limit its liability to its interest in the vessel? (3) If it is, as of what date is it liable, as of the date the action accrued, or as of the date the libel was filed?

■ 1. The validity of the sale in this case depends upon the jurisdiction of the court. The suits in Admiralty Act, approved March 9, 1920, provided that:

"No vessel owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in the possession of the United States or of such corporation or operated by or for the United States of such corporation, and no cargo owned or possessed by the United States or by such corporation, shall hereafter in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions." 46 USCA § 741.

It is well established that the United States may not be sued without its consent, and that consent must be given by Congress. Hill et al. v. United States, 50 U. S. (9 How.) 386, 13 L. Ed. 185; The Siren, 74 U. S. (7 Wall.) 152, 19 L. Ed. 129; The Davis, 77 U. S. (10 Wall.) 15, 19 L. Ed. 875; Stanley v. Schwalby, 162 U. S. 255, 16 S. Ct. 754, 40 L. Ed. 960; Nassau Smelting & Refining Works v. United States, 266 U. S. 101, 106, 45 S. Ct. 25, 69 L. Ed. 190; Morrison v. Work, 266 U. S. 481, 486, 45 S. Ct. 149, 69 L. Ed. 394. When consent has been given, the conditions, upon which it has consented to be sued, must be complied with, even though they be purely formal. Cheatham v. United States, 92 U. S. 85, 23 L. Ed. 561; Kings County Savings Institution v. Blair, 116 U. S. 200, 6 S. Ct. 353, 29 L. Ed. 657; Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U. S. 141, 41 S. Ct. 55, 65 L. Ed. 188; Baltimore & Ohio R. R. Co. v. United States, 260 U. S. 565, 43 S. Ct. 169, 67 L. Ed. 406; United States v. Richards (C. C. A.) 27 F.(2d) 284.

In order to be relieved of the embarrassment and economical waste of having its vessels proceeded against in rem, seized, and detained under attachment proceedings, the United States passed the Suits in Admiralty Act of March 9, 1920 (41 Stat. 525). Blamberg Brothers v. United States, 260 U. S. 452, 43 S. Ct. 179, 67 L. Ed. 346. Section 1 of the act provides that no vessel belonging to the United States, or to a corporation in which the United States or its representative owns the entire outstanding stock, "shall * * * be subject to arrest or seizure by judicial process in the United States." Section 2 of that act provides that in cases where, if vessels of the United States were privately owned or operated, a proceeding in admiralty could be maintained at the time of the commencement of the action provided for in that act, a libel in personam may be brought against the United States, provided such vessel is employed as a merchant vessel. The suit may proceed in accordance with the principles of libels in rem wherever it appears that, had the vessel been privately owned, a libel in rem might have been maintained.

At the time the libel was filed in the Eastern District of Louisiana against the Aberfoil there is no question but that she was owned by the United States and used as a merchant vessel. This libel was an action in rem against the vessel itself. She was seized under judicial process, as in ordinary admiralty suits in rem against vessels privately owned, and was placed in the custody of the marshal, and so remained for more than nine months, and was thereafter sold.

■ This action was expressly prohibited by the Act of March 9, 1920, and was contrary to its express provisions and purposes. The court was, therefore, entirely without jurisdiction, and the proceedings were void ab initio. Consequently the sale may be attacked collaterally. Thompson v. Tolmie, 27 U. S. (2 Pet.) 157, 7 L. Ed. 381; Shriver's Lessee v. Lynn, 43 U. S. (2 How.) 43, 11 L. Ed. 172; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Settlemier v. Sullivan, 97 U. S. 444, 448, 449, 24 L. Ed. 1110; In re Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. Ed. 402; Rich v. Mentz, 134 U. S. 632, 10 S. Ct. 610, 33 L. Ed. 1074; Hovey v. Elliot, 167 U. S. 409, 17 S. Ct. 841, 42 L. Ed. 215.

■ The government contends that in any event it had the right to abandon the vessel, and cites the case of United States v. Neptune Line (C. C. A.) 12 F.(2d) 568, as authority therefor, and, that it did abandon her, it points to the approval by Admiral Benson, of the Shipping Board, of the recommendation of the manager of ship sales, made to him March 26, 1921, that she "be abandoned to the purchasers having liens against said barge." But there the suit was in personam, and the act expressly conferred jurisdiction upon the court. The surrender of the Neptune to the court did not confer ju-

risdiction upon it, but was an incident in the proceedings in which the court already had jurisdiction. It is argued that, because the suit proceeded in personam against the government upon in rem principles, it ought to have the right upon analogy to surrender the vessel, which would measure the limit of its liability, just as an individual could do. The Shipping Board may have the right, in a case in which the court has properly taken jurisdiction, to surrender a vessel to lien claimants; but this does not confer upon the court the right to assume jurisdiction in a case, contrary to the express provisions of the statute, and make legal a sale of a vessel for $1,200 which was admittedly worth between $30,000 and $35,000, and thus defeat the just claims of a suitor, who is proceeding in strict accordance with the provisions of the statute.

■ The purpose of the Suits in Admiralty Act, as above stated, is to relieve the government from the embarrassment and economical waste resulting from the arrest of its vessels, by substituting a procedure in personam for a procedure in rem, but on in rem principles. Since there is no question about the liability of the United States to respond in damages, the act prevented the seizure of its vessels; but the measure of damages against the government is the same as it is against a private individual whose vessel is seized. The purpose of the act was to substitute the liability of the United States for the liability of the vessel, and also a remedy against the United States for the remedy against the vessel. If the Aberfoil had been privately owned, the measure of the damages would be her value at the time the libel was filed and the seizure was made, and not at the time the cause of action accrued. If a litigant is vigilant, and files his libel immediately after the cause of action accrues, he will not usually be subjected to loss by reason of the deterioration of the vessel between seizure and sale. If, however, he does delay in filing his libel, the act does not reward his indolence by making good the loss from deterioration. The extent of his damages is measured by the value of the vessel at the time his libel is filed, when she could be seized, if privately owned. The purpose of Congress was to give an equivalent remedy, and not to make a citizen worse off, or better off, because of government ownership. Consequently the maximum damage to which the libelant is entitled is the value of the vessel at the time the libel was filed. United States v. Neptune Line, supra; The Minnesota (D. C.) 20 F.(2d) 926.

The evidence is insufficient to enable us to determine the value of the vessel at the time the libel was filed. The case will therefore be remanded, so that the commissioner to whom the case has been referred may ascertain the value of the respondent's interest in the Aberfoil on July 26, 1922, when the libel herein was filed.

The decree of Judge Lynch, holding the sale of the Aberfoil on October 25, 1921, by the United States marshal for the Eastern district of Louisiana, void, and the decree of Judge Bodine, restricting the damages of libelant to the interest of the respondent in the vessel at the time the libel was filed on July 26, 1922, are affirmed.

BUFFINGTON, Circuit Judge (dissenting). In my judgment the libel below should be dismissed, on the ground that the decree against, and the sale of, the barge Aberfoil, made in the libel of Menge v. The Aberfoil, in the Eastern District of Louisiana, bound and concluded the present libelant. On the face of the papers the lienor in that court had a justiciable claim against the Aberfoil for goods furnished. As said in Re Transportes Maritimos do Estado, 264 U. S. 108, 44 S. Ct. 237, 68 L. Ed. 580: "Plainly the trial court obtained jurisdiction over the res, and in the absence of any claim of immunity it would have been required to render judgment. It had power to consider and pass upon both form and substance of any objection to its jurisdiction because of ownership and to decide whether it should proceed under the circumstances." This is the case here. The Aberfoil was in the custody of the Louisiana court. If the United States claimed title, that court had jurisdiction to adjudge such claim. But, if it did not so claim, the court had power to proceed and adjudge the libelant's rights. The present libelant had a right to intervene and present its claim in that libel. Not having done so when there was an opportunity to be heard, and especially so when they knew of the libel and took no steps, their rights, as Judge Bodine held, were concluded by the decree, and they cannot attack it collaterally.