**EVERETT STEAMSHIP CORPORA- TION, S/A, Appellant,**

**v.**

**LIBERTY NAVIGATION AND TRAD- ING CO., INC.; SS GALICIA LEE, ex SS NORBERTO CAPAY, her engines, tackle, etc.; SS GALICIA DEFENDER, ex SS SANTA EMILIA, her engines, tackle, etc.; SS GALICIA NAVIGA- TOR, ex SS OUR LADY OF PEACE, her engines, tackle, etc., and the United States of America, Appellees.**

No. 71–1009.

United States Court of Appeals,
Ninth Circuit.

Oct. 5, 1973.

Francis L. Tetreault (argued), of Graham & James, San Francisco, Cal., for appellant.

William E. Gwatkin, III (argued), U. S. Dept. of Justice, Lillick, McHose, Wheat, Adams & Charles, James Brown- ing, Jr., U. S. Atty., San Francisco, Cal., for appellees.

Before HAMLIN and TRASK, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, District Judge:

Everett Steamship Corporation (Everett), a Panamanian corporation, filed this action against the United States (the Government) to recover on maritime liens on the SS Galicia Defender. The District Court granted summary judgment against Everett. Everett appeals.

The Government time chartered the Galicia Defender from Liberty Navigation and Trading Co., Inc. (Liberty). While under the time charter, Everett was the husbanding agent for the vessel. Between February 1, 1967, and February 2, 1968, when the vessel was in far eastern ports, Everett advanced $20,040.-47 for repairs, supplies, and wages for the crew. Everett claims a maritime lien against the vessel for those amounts.

In May, 1968, the Galicia Defender, loaded with cargo for Vietnam, lay idle in the Port of San Francisco because Liberty could not pay the crew. Rather than bear the expense of unloading the cargo, the Government suspended the time charter and, on May 4, 1968, demise chartered the vessel for a round trip voyage to Vietnam.

On June 24, 1968, the Galicia Defender returned from Vietnam. It entered the Port of Oakland where it was seized in an *in rem* action brought by West Coast Ship Chandlers and others. The Government declared the Galicia Defender off-hire and the vessel was sold to pay maritime liens. Everett intervened. It recovered only $1,935.00 because other liens had higher priority.

Five weeks before the seizure in the *in rem* action and when the Galicia Defender was outside the territorial waters of the United States on her way to Viet-

* Honorable Gus J. Solomon, United States Senior District Judge for the District of Oregon, sitting by designation.

nam, Everett filed this action. The complaint alleged that the United States, as demise charterer, was owner *pro hac vice*, 46 U.S.C. § 186, and that Everett was unable to libel the vessel *in rem* because of 46 U.S.C. § 741. The complaint claimed a maritime lien on the Galicia Defender and asserted that the lien was enforceable against the Government by a libel *in personam* under the Suits in Admiralty Act, 46 U.S.C. § 742.

In its answer the Government alleged that the court lacked jurisdiction because the vessel was outside the territorial waters of the district and asserted that 46 U.S.C. § 742 did not apply because no action could have been maintained if the vessel had been privately operated. The Government also stated that the vessel was on its way to Vietnam and would be redelivered to its owner upon its return to the United States.

The District Court dismissed the complaint with leave to amend in an order dated May 28, 1970. Everett then filed an amended complaint in which it also claimed damages against the Government for the loss of priority of its lien because 46 U.S.C. § 741 prevented it from libeling the vessel *in rem*. On October 6, 1970, the court granted the Government's motion for summary judgment. The court held that Everett's inability to libel the Galicia Defender was because of the vessel's absence from the jurisdiction and not because of any immunity under Section 741. The court also ruled that the arrest and sale of the ship did not violate Section 741.

The Suits in Admiralty Act (the Act) prohibits maritime lienholders from seizing vessels in *in rem* actions if the vessels are owned or operated by the United States. 46 U.S.C. § 741. As a substitute for recovering against the vessel, the Act allows lienholders to enforce their liens through *in personam* actions against the Government. 46 U. S.C. § 742. The Act reserves to the United States the benefits of all exemptions and limitations of liability accorded by law to owners, charterers, opera-

tors, or agents of vessels. 46 U.S.C. § 746. The Act also seeks to protect government vessels from seizure in foreign ports by giving the Secretary of State discretion to intervene in foreign proceedings. 46 U.S.C. § 747.

As a demise charterer the Government was liable only *in rem* for debts incurred on the credit of the vessel before the demise charter. When Everett filed its complaint on May 17, 1968, the District Court had no *in rem* jurisdiction since the vessel was outside the waters of the United States. Blamberg Bros. v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346 (1923).

Everett argues that the District Court had jurisdiction over an *in personam* action under Section 742 to enforce an *in rem* liability even though the vessel libeled was not within the territorial waters of the United States. Everett contends that Section 742 transformed its *in rem* rights into an *in personam* cause of action.

There is no merit in this contention. In all of the cases Everett cites to support this contention, the Government had *in personam* liability under the common law or the law of admiralty. No case held that an *in rem* action was made *in personam* by Section 742 for the purposes of jurisdiction.

In Eastern Transportation Company v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472 (1926), the Government breached its statutory duty to mark the wreck of a government-owned merchant vessel that sank in a navigable channel. Plaintiff's barge collided with the sunken wreck and sank. The trial court held that the sunken vessel did not provide a *res* which would support an *in rem* action. The Supreme Court reversed. It held that the breach of the duty to place a marker on the wreck created a direct cause of action in tort against the Government for which plaintiff could maintain an *in personam* action. When the Government had *in personam* liability, Section 742 did not require that damages be limited to the

value of the vessel under *in rem* principles.

In Hoiness v. United States, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. 16 (1948), a seaman was injured aboard a merchant vessel owned by the United States. The complaint did not allege that the plaintiff was a resident of the district in which the action was brought or that the vessel was within the district when the complaint was filed. The District Court dismissed for lack of jurisdiction. The Supreme Court reversed and held that the provision in Section 742 that the plaintiff be a resident of the district or that the vessel be located within the district related to venue and not jurisdiction.

The broad holding in *Hoiness* must be read in connection with the facts of the case which show *in personam* liability. The defect there was not jurisdictional because the Government had *in personam* liability for injuries suffered on government-operated merchant vessels. The opinion did not cite *Blamberg* or discuss jurisdictional requirements when the Government had *in rem* liability only.

Everett contends that even if the court did not have jurisdiction when the complaint was filed, it acquired jurisdiction when the Galicia Defender returned to United States waters. Everett cites Warren v. United States, 179 F.2d 919 (2d Cir., 1949), rev'd on other grounds, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951), and Carroll v. United States, 133 F.2d 690 (2d Cir. 1943). Both *Warren* and *Carroll* were cases in which the Government was liable *in personam*, not *in rem, and Warren*'s holding was limited to venue, not jurisdiction.

■ Even if the court did acquire jurisdiction, Everett would not be entitled to any relief. The Government would be liable only for the value of the vessel, just as a private demise charterer in an *in rem* action. *See* The Minnesota, 20 F.2d 926, 928 (E.D.La.1927). Even before its first complaint was dismissed, Everett had already received all the relief to which it was entitled because it

had received its *pro rata* share of the value of the vessel, based on the priority of its lien.

Everett claims that the United States is liable in damages for the loss in value of its maritime lien. It asserts that during the period that the Galicia Defender was under the time charter, as well as when it was under the demise charter, the vessel was immune from arrest by virtue of Section 741. Everett argues that it was impractical for political and economic reasons to libel the vessel in Vietnam or in any other foreign port and that the Government prevented it from arresting the vessel before the higher priority liens accrued.

■ In the District Court Everett admitted that it had no legal authority to support this "novel approach". There was nothing to prevent Everett from bringing this action under Section 742 many months earlier when the Galicia Defender was in a port of the United States or from seizing it in a foreign port. The Government is not responsible for the loss in value of Everett's lien caused by its own delay in failing to pursue the remedies allowed by law.

Everett also contends that the Government did not have the right to release the Galicia Defender to its creditors because vessels operated by the United States are immune from *in rem* execution under Section 741. It relies on Hudson Trading Company v. United States (THE ABERFOIL), 28 F.2d 744 (3rd Cir. 1928).

■ Section 746 reserves to the United States the benefit of all exemptions and all limitations of liability accorded by law to owners, charterers, operators, or agents of vessels. In our opinion Section 746 qualifies Section 741 and allows the Government to permit judicial seizure of merchant vessels chartered by the Government when necessary to enable it to limit its liability according to law. *See* 46 U.S.C. § 185. The Court in THE ABERFOIL did not consider the interrelation of these two sections.

To the extent that the majority opinion in THE ABERFOIL holds that the Government could not release the vessel to the lienors and could not waive its immunity under Section 741, we think that the majority opinion is incorrect and choose not to follow it.

■ Section 742 does not give a lienholder greater rights against the Government than it would have against a private charterer. *See* McMahon v. Pan American World Airways, Inc., 297 F.2d 268, 269 (5th Cir. 1962); *see also* State of Maine v. United States, 134 F. 2d 574, 575 (1st Cir. 1943), cert. denied, 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720 (1943), cited in Allen v. United States, 338 F.2d 160, 162 (9th Cir. 1964), cert. denied, 380 U.S. 961, 85 S. Ct. 1104, 14 L.Ed.2d 152 (1965). Everett was unable to libel the vessel because she was on the high seas, not because it was owned by the United States: Everett would have been equally unable to seize the vessel had it been privately owned. Everett recovered in the *in rem* action the full amount to which it would have been entitled as a lienholder against a privately operated vessel. It is entitled to no more.

Affirmed.

TRASK, Circuit Judge (dissenting):

I respectfully dissent.

The majority reasons that the district court had no jurisdiction to grant relief to Everett because the Galicia Defender was outside the territorial waters of the United States when the original complaint was filed. That complaint alleged that the vessel would be within the geographical jurisdiction of the court during the pendency of the action.

On June 17, 1968, the United States filed an answer in which it admitted that the vessel was expected within the jurisdiction on or about June 26, 1968. It denied that there was any process pending for her arrest at the instance of Everett.[1] It also alleged as a separate defense that the court lacked jurisdiction because the vessel was outside the waters of the district.

That defense was not called to the attention of the trial court until August 12, 1969, by a motion for judgment on the pleadings. In the meantime, however, on June 24, 1968, the Galicia Defender entered the territorial waters of the district and proceeded to San Francisco where she arrived at 1918 hours Pacific Daylight Saving Time on June 24, 1968. At the time the motion for judgment on the pleadings was heard on September 12, 1969, the defect that the vessel was outside the jurisdiction had been cured. Indeed, the trial court's order did not even mention this defense of lack of jurisdiction but denied relief for failure of the complaint to allege a cause of action upon which relief could be granted. It allowed Everett twenty days within which to file an amended complaint.[2]

The order granting summary judgment from which the instant appeal was taken was addressed to that amended complaint. It was filed June 17, 1970. Again, it alleged the existence of facts which would support its claim of a maritime lien,[3] the time and demise charters

1. The complaint was one in intervention in a libel filed by Oakland Dock & Warehouse Company and then pending against Galicia Defender and two sister ships. The United States answered voluntarily according to the record here. An order was made consolidating seven separate libels but preserving the distinction between the libels of others and that of Galicia Defender.

2. Under these circumstances Blamberg v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346 (1923), does not apply. In that case the vessel against which relief under

the Act was asserted, was, at the date of the filing of the libel, in a foreign port where it remained at all times thereafter. *Cf.* Eastern Transportation Co. v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472 (1927); Warren v. United States, 179 F.2d 919 (2 Cir. 1949).

3. The original complaint as well as the amended complaint asserted maritime lien claims for advances for the payment of crew's wages and furnishing of repairs, supplies and other necessaries. In the amended complaint for the period between February

to the United States which prevented Everett from seizing or arresting the Galicia Defender and its reliance therefore upon the Suits in Admiralty Act, 46 U.S.C. §§ 741, 742 for *in personam* relief.[4] The majority does not consider the problem. It is content with the explanation that section 742 does not give the lienholder "greater rights against the Government than it would have against a private charterer." Since Everett recovered a pro rata share of the proceeds from the *in rem* proceeding in which it intervened against the ship, the majority say that it is entitled to no more.

But the very purpose of the Act is to permit not only a recovery *in rem,* but one *in personam* as well, when the claim is within the framework of the statute. Section 743 provides in part:

"If the libelant so elects in his libel, the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. Election so to proceed shall not preclude the libelant in any proper case from seeking relief in personam in the same suit. . . . "[5]

The majority argue that the limitation of liability provision of the Act, 46 U.S.C. § 746, precludes recovery by Everett of any sums in excess of its pro rata share of the total amount of liens against the vessel in the *in rem* proceeding. They cite McMahon v. Pan American World Airways, Inc., 297 F.2d 268 (5th Cir. 1962). It does not so hold. Nor do any of the cases cited by the Government. What they do hold is that

"The extent of his damages is measured by the value of the vessel at the time his libel is filed, when she could be seized, if privately owned." Hudson Trading Co. v. United States (The

1, 1967 and February 2, 1968, the amount was alleged to be the sum of $20,040.47. Such advances create maritime liens, 1 Benedict on Admiralty 17–20 (6th ed., 1940), and were the vessel privately owned and operated, a proceeding in admiralty could be maintained to enforce them. Claim was also asserted *ex contractu* against Liberty, as owner, under Everett's appointment by Liberty as husbanding agent for the ship. A "husbanding agent" or "port agent" is one who assists the vessel and its master in getting in and out of port, purchases supplies and stores, advances funds for payment of wages, procures repairs, etc. Dorn v. Balfour, Guthrie & Co., 155 F.Supp. 203 (N.D. Cal.1958), aff'd. 262 F.2d 48 (9th Cir. 1958).

4. Suits in Admiralty Act, March 9, 1920, 41 Stat. 525; 46 U.S.C. §§ 741–752. The Act provides in pertinent part:
"§ 741 Exemption of United States vessels and cargoes from arrest or seizure
"No vessel owned by the United States . . . or in the possession of the United States . . . and no cargo owned or possessed by the United States . . . shall, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions: Provided, That this chapter shall not apply to the Panama Railroad Company."

"§ 742 Libel in personam
"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States . . . . Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found. The libelant shall forthwith serve a copy of his libel on the United States attorney for such district and mail a copy thereof by registered mail to the Attorney General of the United States, and shall file a sworn return of such service and mailing. Such service and mailing shall constitute valid service on the United States . . . . ."

5. The fact that some portion of the claim may have been incurred prior to the demise charter to the United States does not defeat recovery. The recovery sought against the United States is not *ex contractu,* but on a statutory right granted as *quid pro quo* for preventing the creditor from arrest and seizure of the ship in assertion of ordinary maritime liens.

Aberfoil), 28 F.2d 744, 747 (3rd Cir. 1928).

Even this quoted liability *in rem* is placed in question by Eastern Transportation Company v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472 (1927), where the offending vessel was a complete wreck, yet *in personam* liability was sustained without limitation.

Here it is plain that Everett elected to and did proceed *in rem*; it is also clear that it continued to insist on its *in personam* remedy against both the United States and against Liberty, the owner under its appointment as husbanding agent. It is entitled to try its case.

I would remand to the trial court for further proceedings consistent with the views expressed herein.