GALBAN LOBO & CO., S. A., v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 14, 1927.)

No. 202.

1. Admiralty ⊂⇒32—Suit may be maintained against United States in district where libelant resides or has principal place of business (Suits in Admiralty Act [Comp. St. §§ 1251¼–1251¼*l*]).

Suit may be maintained against the United States under the Suits in Admiralty Act [Comp. St. §§ 1251¼–1251¼*l*], in the district where libelant resides or has its principal place of business in the United States, or where vessel or cargo charged with liability is found.

2. Admiralty ⊂⇒32—Business through contracts executed by agents held "doing business" in district, within law authorizing suit against United States therein (Suits in Admiralty Act [Comp. St. §§ 1251¼–1251¼*l*]).

Method of carrying on business by foreign corporation through contracts executed in its name by its agents, constituting a continuous course of business in shipping sugar, payment therefor and accommodation of buyers, *held* doing business with a place of business within district, authorizing suit against United States under the Suits in Admiralty Act (Comp. St. §§ 1251¼–1251¼*l*).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

3. Shipping ⊂⇒58(2¾)—Evidence held to establish breach of charter contract, authorizing recovery for expense in keeping cargo alongside.

Evidence *held* to establish breach of contract for charter of vessel, authorizing recovery for expense in keeping cargo alongside vessel after lay days had commenced.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Galban Lobo & Co., S. A., against the United States. From a decree dismissing the libel (14 F.[2d] 435), libelant appeals. Reversed, with directions.

See, also, 285 F. 665.

Everett, Clarke & Benedict, of New York City (Herman S. Hertwig and Walter C. Elliott, both of New York City, of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. The appellant, a Cuban corporation, chartered the steamship Elmac, owned and operated by the

appellee, on February 16, 1921, to carry a cargo of sugar from Havana to New York or Philadelphia. When the charter was executed, and before February 21st, the appellant was advised that the steamship was ready for the cargo in Havana, and acting upon such advices put the cargo on board lighters and tendered it alongside the vessel on February 21, 1921. The captain declined to receive the cargo, stating that the vessel was disabled and in need of a new propeller. On February 23, 1921, this charter was canceled, and another charter was entered into for another of the appellee's vessels, but it was not ready to receive the cargo until February 28th. Because of this delay by the Elmac to receive the cargo, and the consequent detention of the lighters, appellant suffered damages for which the libel is filed.

In the answer to the libel it is admitted that the substituted chartered vessel was not ready to receive the cargo until February 26, 1921, and the loading was completed on February 28, 1921. But it is denied that notice was given that the Elmac was ready to receive the cargo for the 21st. Other affirmative defenses interposed were: First, that the charter to the Elmac was canceled February 23d pursuant to a stipulation in the charter; and, second, that the appellant did not maintain an office or principal place of business in the district for the transaction of business, and therefore could not maintain its libel. The District Judge dismissed the libel, because he found the appellant had no place of business within the district, and held that the court did not have jurisdiction.

The charter breached, and for which suit is brought, provided for loading a full cargo on the Elmac. Paragraph 13 read that lay days, if required by the charterers, should not commence before February 21, 1921, and the charterers or their agents had the privilege of canceling the charter, should the steamship not be at the loading port ready for cargo by February 26, 1921. Paragraph 14 provided that the steamer's business at the ports of loading and discharging should be attended to by the owners or their agents. There was ample evidence that the agent of the ship gave notice to the appellant that the steamer was ready for loading, as claimed. It was stated that she was at Havana, awaiting orders to load.

Under the terms of the charter referred to, if the steamer was ready as advised, lay days would commence not later than February 21st, and the appellant was compelled accordingly to have cargo alongside not later than that day, or incur liability for detention of the vessel. It was pursuant to this requirement that the appellant loaded the cargo on lighters and proceeded alongside on February 21st. It also appears from the master's testimony that the vessel's propeller was damaged, but it also appeared that he had navigated with it in its damaged condition. However, from the master's testimony, the agents of the ship considered the vessel was in a condition to load cargo without repair to the propeller. They kept after the master to get a seaworthy certificate from the American Bureau for Shipping in Havana, which, if given, would permit him to make the voyage without repair. After the appellant tried to be released from its obligation to put the cargo alongside the vessel not later than the 21st, under the provisions of the charter and pursuant to the notice of readiness given by the vessel's agents, the agents of the vessel refused to cancel until February 23d, and kept insisting that the vessel was ready, and it appears that up to this time the master was in Havana endeavoring to obtain a seaworthy certificate. Thus obligated to be prepared to carry out the charter, the appellant brought the cargo alongside the vessel, and kept it there, to its expense and damage.

[1] It is urged that under the Suits in Admiralty Act (Act March 9, 1920, c. 95, 41 Stat. 525 [Comp. St. §§ 1251¼–1251¼l]), the court did not have jurisdiction. It is now authoritatively announced that a suit may be maintained against the United States under the Suits in Admiralty Act in the district where the libelant resides or has its principal place of business in the United States, or where the vessel or cargo charged with liability is found, and this is true as in the case of private ownership of the vessel, whether the liability be in rem or in personam. Nahmeh v. United States, 267 U. S. 122, 45 S. Ct. 277, 69 L. Ed. 536; Eastern Transportation Co. v. United States, 47 S. Ct. 289, 71 L. Ed. —— (Jan. 3, 1927). Where the claim arises in connection with the operation of a ship, the statute clearly intends to supply a remedy for the wrong, as well as the right of enforcing the liability against the United States in personam. Section 1 (Comp. St. § 1251¼) does not in terms refer to the suit in rem. It refers to the arrest and seizure by judicial process, and this sufficiently indicates covering the charging of the vessel or cargo with liability through seizure upon writs of foreign attachment, as well as seizure upon process in a suit in rem. Section 4 (Comp. St. § 1251¼c) provides for substitution of

the government in any suit in admiralty, where a private-owned vessel may have been arrested or attached upon any cause of action arising during previous possession, ownership, or operation of such vessel by the United States.

It will be noted that section 7 (Comp. St. § 1251¼f) provides for action by the government, through its consular representative in foreign ports, in the event "that any vessel or cargo within the purview of sections 1 and 4 of this act is arrested, attached, or otherwise seized by process of any port in any country other than the United States * * * for any cause of action arising from, or in connection with, the possession, operation, or ownership of any such vessel." In Blamberg Bros. v. United States, 260 U. S. 457, 43 S. Ct. 179, 67 L. Ed. 346, it was held that the act did not authorize a suit in personam against the United States as a substitute for a libel in rem, when a United States vessel was not in a port of the United States or in any one of her possessions at the time of filing the libel, and that Congress had no power to grant immunity from seizure in respect to such vessels when in foreign ports, and did not intend so to do. In the Nahmeh Case, the Supreme Court held that the provisions as to venue permitted liability to be enforced in the district where the vessel lies, also in the district where the libelant resides, as well as in the district where the libelant has its principal place of business in the United States. Such rights were held to be cumulative.

The phrase of section 2 (Comp. St. § 1251¼a) "vessel charged with liability," means that the vessel is the wrongdoer. It refers to suits in rem. The wrong here was the failure to furnish the vessel chartered as agreed. This breach of the charter did not create a lien against the ship. The Saturnus (C. C. A.) 250 F. 407. The Elmac was therefore not a vessel charged with liability. But a libel could be maintained for the wrongful breach in personam in a district where the appellant resided or had its principal place of business in the United States. Appellant's principal place of business in the United States was in New York City. It carried on a considerable business in the district, making contracts through its agent at a fixed place of business. It controlled its agents, a New York corporation, by stock ownership. On the contracts made here for its account, the agents collected and remitted money monthly to appellant in Havana.

[2] While its business in this city was chiefly contracts executed in its name by its agents, they were signed for the account of Galban Lobo & Co. The agents had a guaranteed minimum yearly compensation from the appellant. The business here was executed in appellant's name. There was more than solicitation of orders. It was a continuous course of business in shipping sugar, payment therefor and accommodation of buyers. International Harvester v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479. This method of carrying on business is doing business here with a place of business. Knutson v. Campbell River Mills (D. C.) 300 F. 242; St. Louis Ry. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77. It differs from the case of mere authority to solicit orders (People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537), or where one corporation owns the stock of another and permits a subsidiary corporation to carry on its own business (Peterson v. Chicago, R. I. & P. R. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841). Since appellant's only, and therefore principal, place of business was in the Southern district, the court had jurisdiction to maintain the suit.

[3] The breach of the contract is established, and there should have been a recovery for the amount claimed.

The decree is reversed, with costs, and direction to the District Court to enter a decree for libelant-appellant.