Booth, O-hief Justice,
delivered the opinion of the court:
The sole issue in this case is one of jurisdiction. The plaintiff is a corporation organized and existing under the laws of the Kingdom of Sweden. It owned the steamship *255 Daland, a vessel of 3,850 deadweight tons, including bunkers. On December 17, 1918, it entered into a charter party with the French authorities for a voyage from Gothenburg, Sweden, to Eouen, France. The charter contained, among others, the following pertinent provisions:
“ 6. Cargo to be received by merchants at their risk and expense alongside the steamer not beyond the reach of her tackle and to be discharged as fast as the steamer can deliver according to the customs of the port.
“ Time for discharge to commence to count 24 hours after the steamer’s arrival at port or place in France and/or Great Britain where she may be ordered by the French authorities and/or British authorities to await her discharging berth, but steaming time from such place of detention to berth of discharge not to count.
“ 7. Demurrage as per agreement between the British authorities and Sjofartskommitten.
“ 8. Owners have a lien on the goods for freight, dead freight, demurrage, and damages for detention. Charterers remain responsible for dead freight and demurrage (including damages for detention) incurred at port of loading. With regard to freight and demurrage (including damages for detention) incurred at port of discharge, charterers also remain responsible but only to such extent that it has been impossible for owners to cover such claims by exercising the lien on the cargo.”
Prior to sailing from'Gothenburg the charterer accepted from Trummer & Company two shipments of matches, paper, and wood consigned to the chief quartermaster, ■ American Expeditionary Forces in France. The terms of the bills of lading for said shipments concerning demurrage were in accord with and expressly adopted the terms of the charter party of December 17, 1918, quoted above. Demurrage accrued to the plaintiff as found by the court. (Findings VIII, IX, X, and XI.) The defendant concedes liability for the same. Eight of recovery is challenged upon the theory that the suit is one governed by the suits-in-admiralty act of March 9,1920 (41 Stat. 525), and this court is without jurisdiction to entertain it.
The plaintiff predicates its right of action upon sections 145 and 155 of the Judicial Code. Section 155 is in the following terms:
*256 “ Aliens who are citizens or subjects of any government which accords to citizens of the United States the right to prosecute claims against such government in its courts, shall have the privilege of prosecuting claims against the United States in the Court of Claims, whereof such court, by reason of their subject-matter and character, might take jurisdiction. (36 Stat. L. 1139.)”
The pertinent provisions of the suits-in-admiralty act we quote as follows:
“ Be it endcted by the Senate and Home of Representatives of the United States of America in Congress assembled, That no vessel owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock, or in the possession of the United States or of such corporation or operated by or for the United States or such corporation, and no cargo owned or possessed by the United States or by such corporation, shall hereafter, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions : Provided, That this act shall not apply to the Panama Eailroad Company.
“ Sec. 2. That in cases where if such vessel were privately-owned or operated, or if such cargo were privately-owned and possessed, a proceeding in admirality could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States or against such corporation, as the case may be, provided that such vessel is employed as a merchant vessel or is a tug boat operated by such corporation. Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found. The libelant shall forthwith serve a copy of his libel on the United States attorney for such district and mail a copy thereof by registered mail to the Attorney General of the United States, and shall file a sworn return of such service and mailing. Such service and mailing shall constitute valid service on the United States and such corporation. In case the United States or such corporation shall file a libel in rem or in personam in any district, a cross libel in personam may be filed or a set-off claimed against the United States or such corporation with the same force and effect as if the libel had been filed by a private party. Upon application of either party the cause *257 may, in the discretion of the court, be transferred to any other district court of the United States.
“ Seo. 3. That such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties. A decree against the United States or such corporation may include costs of suit, and when the decree is for a money judgment, interest at the rate of 4 per centum per annum until satisfied, or at any higher rate which shall be stipulated in any contract upon which such decree shall be based. Interest shall run as ordered by the court. Decrees shall be subject to appeal and revision as now provided in other cases of admiralty and maritime jurisdiction. If the libelant so elects in his libel the suit may proceed in accordance with the principles of libels in rem wher'ever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. Election so to proceed shall not preclude the libelant in any proper case from seeking relief in personam in the same suit. Neither the United States nor such corporation shall be required to give any bond or admiralty stipulation on any proceeding brought hereunder. Any such bond or stipulation heretofore given in admiralty causes by the United States, the United States Shipping Board, or the United States Shipping Board Emergency Fleet Corporation, shall become void and be surrendered and canceled upon the filing of a suggestion by the Attorney General or other duly authorized law officer that the United States is interested in such cause and assumes liability to satisfy any decree included within said bond or stipulation, and thereafter any such decree shall be paid as provided in section 8 of this Act.
*****
“ Sec. 5. That suits as herein authorized may be brought only on causes of action arising since April 6,1917, provided that suits based on causes of action arising prior to the taking effect of this Act shall be brought within one year after' this Act goes into effect; and all other suits hereunder shall be brought within two years after the cause of action arises.”
The foregoing statute has been many times before the courts and usually upon issues of jurisdiction. Available cases do not as to facts cover the precise point here involved.
The defendant relies with confidence upon the case of Eastern Transportation Co. v. United States, 272 U. S. 675. *258 This case, followed by the case of Johnson v. Fleet Corporation, 280 U. S. 320, determines beyond doubt the lack of jurisdiction in this court to adjudicate controversies which fall within the facts therein involved. The instant case, however, presents a record of decidedly different character, both as to persons and subject matter, and in our opinion is not within the precedents cited by the defendant. The Supreme Court in repeated decisions has stated plainly the intent of Congress in enacting the suits-in-admiralty act and definitely defined its scope. Prior' to the passage of the act the Supreme Court in the case of The Lake Monroe, 250 U. S. 246, had held that under the shipping act of 1916 and the merchant marine act of 1920 Government-owned merchant vessels were subject to admiralty and maritime proceedings the same as privately owned merchant vessels. To relieve the Government from the inconvenience of the arrest and detention of its merchant vessels operated by the Government, or the designated agencies thereof, express provisions were enacted, saving to the injured parties the right of action in admiralty, but divesting the plaintiffs of any and all right of lien against the vessel or cargo, or their arrest and detention. Manifestly Congress recognized that adverse decrees in admiralty against the Government or Fleet Corporation must be satisfied from the Treasury through appropriations for the purpose, and consented to be sued as the act provided in accord with its terms and provisions. The unhampered operation of the Government’s merchant vessels was the intended objective. As said by the Supreme Court in Fleet Corporation v. Rosenberg Bros., 276 U. S. 202, 213:
“ It provides a remedy in admiralty for adjudicating and satisfying all maritime claims arising out of the possession or operation of merchant vessels of the United States and the corporations, in which the obligation of the United States is substituted for that of the corporations. To that end it furnishes a complete system of administration, applying to the United States and the corporations alike, by which uniformity is established as to venue, service of process, rules of decision and procedure, rate of interest, and periods of limitation; and not only provides that the judgments against *259 the corporations, as well as those against the United States, shall be paid out of money in the Treasury, but repeals the inconsistent provisions of all other acts.
“ In view of these provisions of the Act we can not doubt that it was intended to furnish the exclusive remedy in admiralty against the United States and the corporations on all maritime causes of action arising out of the possession or operation of merchant vessels. And nothing in its legislative history indicates a different purpose.
“It follows that after the passage of the Act no libel in admiralty could be maintained against the United States or the corporations on such causes of action except in accordance with its provisions; * *
The decided cases uniformly limit the applicability of the suits-in-admiralty act to admiralty and maritime causes of action affecting the operation of the Government’s merchant vessels. This, it seems to us, is the settled scope of the legislation. Blamberg Bros. v. United States, 260 U. S. 452. In Fleet Corporation v. Rosenberg Bros. (supra), page 214, the Supreme Court said:
“Whether in addition to furnishing an exclusive remedy in admiralty, the Act also prevents a resort to any concurrent remedies against the United States or the corporations on like causes of action in the Court of Claims or in courts of law, is a question not presented bjr these cases and upon which, although referred to in the argument, we express no opinion. And it is unnecessary to determine other contentions of the Fleet Corporation relating to the questions of deviation and laches.”
And in Johnson v. Fleet Corporation (supra), page 327, it was said: “We conclude that the remedies given by the act are exclusive in all cases where a libel might be filed under it.” We think it only necessary to assert that the plaintiff company could not have filed a libel under the act. The venue provisions and foreign residence of the corporation precluded recourse thereto. The vessel was never in an American port. In addition to this, the character of the transaction itself is such as to at least engender substantial doubt as to the intent of Congress to extend the right and remedy to cases like this. The Government engages transportation for war supplies from a foreign vessel owner, a simple contract of carriage, the merchandise being consigned to a foreign port beyond the jurisdiction of the defendant, *260 and where, of course, the suits-in-admiralty act is without force. It is a mere contract of affreightment accomplished by the plaintiff in accord with the terms of the bill of lading, in the entire course of which no merchant vessel of the United States is involved and no impelling reasons for the applicability of the suits-in-admiralty act.
Section 7 of the statute provided that, in the event of the seizure of a merchant vessel or cargo, of the Government in a foreign port, the Secretary of State may, in his discretion, upon the request of the Attorney General, direct the proper United States consul to claim immunity from such suit and seizure and to execute a bond on behalf of the United States for release of the vessel and cargo, and in the case of Blamberg Bros. (supra) the Supreme Court, at page 459, said:
“ Congress had no power, however, to enact immunity from seizure in respect of such vessels when in foreign ports, and therefore the embarrassment of seizures was to be mitigated in another way, i. e., by claiming immunity on international grounds and, if that failed, by stipulation or bond in the name of the United States. The provisions of the seventh section confirm the construction by which provisions of the second section are limited in their application to vessels within the jurisdiction of the United States.”
We do not overlook the fact that the plaintiff comes into the United States and asserts its claim under section 155 of the Code, and by so doing, if we are correct, obtains the right to do so for a statutory period of six years; nor are we unmindful of the provision in section 155 which limits our jurisdiction with respect to aliens to the precise limitations of section 145 of the Code. If, of course, the suits-in-admiralty act divests this court of jurisdiction over the involved subject matter, and leaves the plaintiff without a provided remedy, the defendant’s position is invulnerable. As we apprehend the contentions, the defendant concedes our jurisdiction under section 145 if a libel may not be filed by the plaintiff under the suits-in-admiralty act. It is to be observed, however, that whatever advantages the plaintiff obtains, if such an argument is at all available, are minimized to the extent of the loss of interest and costs, items which we are precluded from making a part of our judgment.
*261 We are not inclined to tbe opinion that it was the intent of Congress in enacting the suits-in-admiralty act to deny a nonresident alien recourse to this court in a case of this character, where, by the terms and provisions of the act, it was impossible for such a claimant to invoke its provisions. The failure to make provision for the assertion of claims by a nonresident alien in the district courts of the United States, whereas here the venue provisions of the act exclude the possibility of so doing, is not, we think, to be attributable to a legislative oversight, or an intent to withhold from claimants of this class all remedy for, as in this case, a conceded loss and injury. The importance of this case lies not only in this single claim but many others of a similar nature now pending.
Judgment for the plaintiff for $6,419.48. It is so ordered.
Williams, Judge; LittletoN, Judge; and GreeN, Judge, concur.