Irving J. Epstein and Company, Appellee, v. Southern Railway Company et al., Defendants Below. Appeal of Inland Waterways Corporation, Appellant.

Gen. No. 42,315.

Opinion filed March 22, 1943.

FRANCIS M. SHEA, Assistant United States Attorney General, J. ALBERT WOLL, United States Attorney, and JAMES J. LEWIS, Assistant United States Attorney, for appellant; HAROLD B. FINN, Special Assistant to Attorney General, JAMES J. LEWIS, Assistant United States Attorney, and THOMAS F. McGOVERN, Department of Justice Attorney, of counsel.

ALEXANDER GOLBUS, of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff is the consignee in five bills of lading issued by the Southern Railway Company, whereby it promised to carry from Atlanta, Georgia, to Memphis, Tennessee by rail, thence by water in the boats of the Inland Waterways Corporation to Chicago, five carloads of shelled peanuts. Plaintiff claims the pea-

nuts, which were delivered to the carrier in good condition at Atlanta, were delivered to him in a damaged condition in Chicago, and sues to recover the damages.

The defense interposed by motion and by answer was that the municipal court of Chicago was without jurisdiction. The defense was disallowed. The plaintiff dismissed as to the Southern Railway Company, codefendant. The cause was tried by the court. There was a finding for plaintiff with damages assessed at $2,500 against the Inland Waterways Corporation, and it appeals.

The Inland Waterways Corporation was created by Act of Congress of June 3, 1924. (43 Stat. 360, 49 U. S. C., § 155 *et seq.,* Code, 1934 Ed., Title 49, p. 2247, §§ 151–156.) The defendant Inland Waterways Corporation is a wholly owned corporate agency of the United States. The act grants to the corporation power to sue and be sued, to "conduct the business of the common carrier by water and maintain, manage and operate properties held for, or used in the service of transportation." It is also given power necessary or incidental to the powers expressly granted to it. Paragraph (C) of section 153 directs:

"The operation of the transportation and terminal facilities under this sub-division of this Chapter shall be subject to the provisions of Chapter I of this title and to the provisions of Chapter 23, Title 46, shipping, in the same manner and to the same extent as if such facilities were privately owned and operated; and all vessels of the corporation operated and employed solely as merchant vessels shall be subject to all other laws, regulations and liabilities governing merchant vessels."

Section 1 (1) of the Interstate Commerce Act states that the provisions of the chapter shall apply to common carriers engaged in the transportation of passengers or property "wholly by railroad or partly by

railroad and partly by water, when both are used under a common control, management or arrangement for a continuous carriage or shipment.''

Section 153 (C) of section 20 (11) provides:

". . . that all actions brought under and by virtue of this Paragraph against the delivering carrier shall be brought, and may be maintained, if in a District Court of the United States, only in a District, and if in a State Court, only in a State through or into which the defendant carrier operates a line of railroad, . . . .''

Paragraph 12 of the same chapter provides:

"The common carrier, railroad or transportation company issuing such receipt or bill of lading, or delivering such property so received and transported shall be entitled to recover from the common carrier railroad or transportation company on whose line the loss, damage or injury shall have been sustained. The amount of such loss, damage or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment or transscript thereof.''

At the time the act creating the defendant corporation was approved there was in existence an act known as the Suits in Admiralty Act, approved March 9, 1920. (41 Stat. 525, 46 U. S. C., § 741, 752.) It provides a remedy in admiralty for adjudicating all maritime claims arising out of the possession or operation of merchant vessels belonging to the United States or to any corporation in which the United States or its representatives own the outstanding stock. Section 1 of the act provides in substance that no vessel of the United States or of any such corporation shall, in view of section 2, be subject to arrest or seizure by judicial process in the United States or its possessions. Prior to the enactment of this statute such ves-

sels were so liable in proceedings in admiralty which were *in rem*. Section 2 of the Suits in Admiralty Act provides that thereafter a libel *in personam* may be brought on such claims and that such action may be brought against the United States or against any such corporation. The act further provides that such suit *in personam* may be brought in the United States district court for the district in which the parties so suing, or any of them, reside or have their place of business· in the United States, or in which the vessel charged may be found.

The sole question for determination is whether the municipal court of Chicago had jurisdiction under section 20 (11) of the Interstate Commerce Act, as plaintiff contends, or whether the Suits in Admiralty Act of March 9, 1920, provides the exclusive remedy for enforcing this kind of a claim against the Inland Waterways Corporation by libel *in personam* in a court of Admiralty and in a United States district court having jurisdiction, which in this case would be the United States district court of northern Illinois. We hold the Suits in Admiralty is applicable and the jurisdiction it provides exclusive. This construction is justified by the last clause of paragraph (C) of section 153 of the act creating the Inland Waterways Corporation (above quoted). It will be noted this paragraph carefully distinguishes between the "transportation and terminal facilities" and the "liability" of the corporation. The first named are made subject to the provisions of the Interstate Commerce Act; the second are subject to *all other laws, regulations and liabilities* governing merchant vessels. The distinction seems altogether reasonable. In exercising transportation and terminal facilities it would be most convenient and necessary to apply the rules and regulations of the Interstate Commerce Commission. In determining wholly distinct questions of corporation *liability* the Congress may well have hesitated to grant

jurisdiction of a corporation wholly owned by the United States to courts other than its own. Section 153 (C) of the Inland Waterways Corporation Act is taken almost *verbatim* from section 201 (e) of the Transportation Act of 1920; 41 Stat. 458, 49 U. S. C. 201 (e), approved February 28, 1920, only nine days before approval of the Suits in Admiralty Act. Defendant points out that it is unreasonable to suppose Congress did not intend to include as subjects to which the statute was applicable the large fleet of merchant vessels it had just turned over to the Secretary of War under the trade name of Federal Barge Lines, of which the defendant corporation is the successor. The first section of the act extends immunity to all vessels "owned by the United States or its representatives which own the entire outstanding capital stock." The Panama Railroad Company, which conducted a railroad in the Canal Zone and also operated a fleet of merchant vessels there, was excluded from the act by an express provision. Defendant plausibly argues that if it had been the intention of the Congress the act should not apply to defendant's predecessor, Congress would have likewise expressly excluded it. We may not read into the act an exception which the Congress evidently intended to leave out.

Moreover, the language of section 11, Title 49 of the Interstate Commerce Act confirms this construction. It provides in substance that actions brought thereunder against a delivering carrier may be brought in a district court or State court, but if in a State court, "only in a State through or into which the defendant carrier operates a line of railroad." Plaintiff does not contend defendant operates or owns any line of railroad anywhere in Illinois, or anywhere within the jurisdiction of the United States district court for northern Illinois. This clause was inserted in the act by way of amendment. While it was under consideration by Congress an attempt was made to

delete this clause. It was voted down. (See Congressional Record, pp. 12757, 12759, 12763, 12764.)

We conclude the Suits in Admiralty Act of March 9, 1920, is here applicable, and that under its provisions the United States courts have exclusive jurisdiction of any action plaintiff may bring on this cause.

In *United States Shipping Bd. Emergency Fleet Corp. v. Rosenberg Bros. & Co.*, 276 U. S. 202, the history of the Suits in Admiralty Act is recited and the court said:

"In view of these provisions of the Act we cannot doubt that it was intended to furnish the exclusive remedy in admiralty against the United States and the corporations on all maritime causes of action arising out of the possession or operation of merchant vessels."

In *Johnson v. United States Shipping Bd. Emergency Fleet Corp.*, 280 U. S. 320, the defendant was a like corporation. The court considered causes in tort as well as in contract brought against it and as to each held the exclusive remedy was under the Suits in Admiralty Act. The court said:

"Prior to the passage of the Act, merchant vessels of the United States were subject to seizure. § 9, Shipping Act, September 7, 1916, 39 Stat. 730. *The Lake Monroe*, 250 U. S. 246. And the Fleet Corporation was liable to be sued in state or federal courts on causes of action arising out of the operation of such ships. Cf. *Sloan Shipyards v. U. S. Fleet Corp.*, 258 U. S. 549. The Act relieved the United States of the inconvenience resulting from such seizures and gave remedy by libel *in personam* against the United States and such corporations. *Blamberg Bros. v. United States*, 260 U. S. 452, 458. But that is not its only purpose. It authorizes libel *in personam* where there is nothing on which recovery *in rem* could be had. *Eastern Transp. Co. v. United States*, 272 U. S. 675.

And it furnishes the exclusive remedy in admiralty against the United States and such corporations on maritime causes of action arising out of the possession and operation of merchant vessels."

In *Sevin v. Inland Waterways Corp.*, 88 F. (2d) 988, the circuit court of appeals for the fifth circuit (the defendant being this same corporation) said:

"Doubt was once felt as to whether the act applied only to remedies sought in admiralty, leaving intact concurrent remedies at law or in the Court of Claims, and the question was expressly left open in *United States Shipping Board Emergency Fleet Corporation v. Rosenberg Bros. & Co.*, 276 U. S. 202, 48 S. Ct. 256, 72 L. Ed. 531. But in *Johnson v. U. S. Shipping Board Emergency Fleet Corporation*, 280 U. S. 320, 50 S. Ct. 118, 74 L. Ed. 451, the act was held to provide the exclusive remedy against the United States and its wholly owned corporations for maritime causes of action arising out of the possession and operation of merchant vessels and to preclude actions at law in state or federal courts to enforce such causes of action."

Later opinions of the Supreme Court are to the effect that while the Suits in Admiralty Act "left all personal actions against others wholly uneffected," in so far as the United States or corporations wholly owned by it are concerned, the remedy is exclusively under the Suits in Admiralty Act on all questions of liability. *Brady v. Roosevelt Steamship Company, Inc.*, No. 269. October Term, 1942, not yet published; opinion filed January 18, 1943.

The judgment of the municipal court will be reversed and the cause remanded with directions to dismiss plaintiff's suit for want of jurisdiction.

*Reversed and remanded with directions.*

O'CONNOR and McSURELY, JJ., concur.