## BLAMBERG BROTHERS *v.* UNITED STATES.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

No. 165. Argued December 5, 1922.—Decided January 2, 1923.

The second section of the Suits in Admiralty Act does not authorize a suit *in personam* against the United States, as a substitute for a libel *in rem*, when the United States vessel is not in a port of the United States or of one of her possessions. P. 458.

272 Fed. 978, affirmed.

APPEAL from a decree of the District Court dismissing a libel in admiralty for want of jurisdiction.

*Mr. D. Roger Englar,* with whom *Mr. James W. Ryan, Mr. J. Edward Tyler, Jr., and Mr. T. Catesby Jones* were on the briefs, for appellant.

The remedy afforded by § 2 of the Act of March 9, 1920, is not limited to cases where, if the vessel were privately owned, a proceeding in admiralty could have been maintained within the territorial limits of the United States, but is available generally to all persons who could have maintained proceedings in admiralty against vessels of the United States anywhere in the world prior to the passage of this act. *Smith* v. *United States* (unreported, Dist. Court, Eastern Dist. Louisiana, August 4, 1922); *Phoenix Paint & Varnish Co.* v. *United States* (unreported, Dist. Court, Eastern Dist. Pennsylvania, November 17, 1921).

This conclusion is supported by the fact that, if the substitute remedy were not available so long as the vessel remained outside the United States, § 5 of the act would deprive the libelant of any remedy in cases like the present, where the vessel did not return within the time provided for suit.

The argument of the Government and the decision of the judge below proceed on the assumption that the United States desired to force its citizens to sue its vessels in the courts of foreign countries wherever this remedy was available to them, although opening its own courts to such suits where jurisdiction could be had only in those courts. As might be expected, this view finds no support in the language of the act. On the contrary, § 7 indicates an intent by Congress to prevent, as far as lay in its power, the seizure of vessels of the United States in foreign countries as well as in the United States; and to concentrate all such litigation in its own courts.

Moreover, the United States would thus avoid incurring the expense of furnishing surety bonds, and of retaining counsel to defend it in litigation in foreign countries.

Congress clearly intended to substitute the personal credit of the United States for the security of the particular vessel. In the present case the libelant had a right to arrest the "Catskill" as security for its claim. Having that right, it was within the class of vessel-creditors entitled to sue the United States *in personam.*

Section 8 of the act, providing that decrees in suits under the act shall be payable "out of any money in the Treasury of the United States not otherwise appropriated," is substantially a pledge by the United States of those unappropriated moneys in the Treasury as a fund or stipulation to meet the liabilities incurred by the Shipping Board's vessels. This general pledge or stipulation was apparently intended as a substitute for multitudinous stipulations to release individual vessels from arrest. It was intended to be available to everyone who previously had a right to have a United States vessel arrested as security.

If Congress intended to prevent vessels from being delayed because of arrest under legal process, the theory of the lower court that the libelant in the present case should have arrested the vessel in Cuba would, by encouraging delay to the vessel, violate the intention of Congress.

Congress intended to grant a right to sue the United States *in personam* to everyone who had a cause of action against the vessel under § 9 of the Shipping Act of 1916. This would be so even if the libelant had no present ability to arrest the vessel, provided it had a right or cause of action against her.

Sections 1 and 7 of the Suits in Admiralty Act repeal the remedy provided by § 9 of the Shipping Act of 1916. The first sentence of § 2 of the Suits in Admiralty Act

defines that part of § 9 of the Shipping Act of 1916 which is not repealed. In other words, the first sentence of § 2 of the Suits in Admiralty Act deals only with causes of action, substantive rights or liabilities. The second sentence deals only with venue. Therefore, the phrase in the first sentence, if " a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for," requires only that the cause of action or substantive right be of an admiralty nature, and was merely intended to exclude common-law causes of action on which the vessel might be arrested under foreign attachment.

The first sentence does not require that the libelant be able to arrest the vessel at the time he files his libel. It merely requires that he have an admiralty cause of action enforceable, if the vessel were privately owned, on her coming within the court's territorial jurisdiction. Congress eliminated from the original bill a proposed requirement in the first sentence that the substitute remedy should be available only if, in addition to there being an admiralty cause of action, " the vessel or cargo could be arrested or attached at the time of the commencement of suit." As finally passed, the act merely requires the libelant to show that his cause of action or substantive right is one such as District Courts " ordinarily have cognizance " of " in their admiralty and maritime jurisdictions."

The United States, by appearing generally and answering in this suit, there having been at the time the suit was commenced jurisdiction of the person or vessel at Havana, waived any requirement as to venue or jurisdiction of the person. *United States* v. *Hvoslef,* 237 U. S. 1, 11. A suit in Havana against a vessel owned by the United States would be a suit against the United States. *The Western Maid,* 257 U. S. 491.

It was unnecessary for the libelant to elect whether to proceed *in personam* or *in rem;* but the libelant did in

fact elect to proceed in accordance with the principles of libels *in rem.*

Mr. *Solicitor General Beck,* with whom Mr. *Assistant Attorney General Ottinger, Mr. J. Frank Staley,* Special Assistant to the Attorney General, and Mr. *Norman B. Beecher* were on the brief, for the United States.

Mr. Chief Justice Taft delivered the opinion of the Court.

This is an appeal from the District Court of Maryland on a question of jurisdiction duly certified by the District Judge.

The appellant, a corporation of Maryland, February 26, 1921, filed a libel *in personam* against the United States under the Suits in Admiralty Act, approved March 9, 1920, c. 95, 41 Stat. 525. The libel alleged that on October 6, 1920, the libelant had shipped 1500 bags of corn from Baltimore to Havana, Cuba, to its own order, upon the barge " Catskill," that the corn had never been delivered in accordance with the terms of the bills of lading, and that due to the delay the corn had greatly deteriorated in value, whereby libelant had been damaged in the sum of $15,000. The libel contained this averment, " Third. That said barge ' Catskill ' is now, or will be, during the pendency of process hereunder, within this District and within the jurisdiction of this Honorable Court."

The United States made answer April 22, 1921, through the district attorney. It admitted that it was the qualified owner of the " Catskill," but denied that it was or had ever been, in charge of the operation of the barge. It alleged that it entered into a contract for the sale of the barge July 26, 1920, for sixty thousand dollars, six thousand dollars in cash and the balance in monthly instalments of three thousand dollars, that the vendee had defaulted in all the monthly payments, that the

barge was delivered to the vendee June 30, 1920, and the United States had no control over her management or operation, and did not make the contract of affreightment described in the libel.   In answer to the third paragraph of the libel the respondent alleged that it was advised that the barge was in Havana and had no knowledge when it would arrive in the jurisdiction of the court. On May 3, 1921, having obtained leave of court, the United States as respondent filed a suggestion of want of jurisdiction in which it averred positively that the barge was then in the port of Havana, Cuba, where it had been libeled in the sum of $3,725 for wage claims.   It further averred that libels *in personam* had been filed against it in three other district courts of the United States for claims aggregating a sum in excess of the value of the barge which was alleged not to exceed $50,000. The suggestion concludes that the respondent can not be proceeded against by a libel *in personam,* or by a libel in the nature of an *in rem* proceeding as provided for by the Suits in Admiralty Act, for the reason that at the time of filing the libel, and at all times thereafter, the barge "Catskill" was and had been at the port of Havana, Cuba, and without the jurisdiction of the court.   The libelant, answering the suggestion, alleged that, although under the facts as alleged, no direct personal liability arose against the respondent under the general law, yet under the Suits in Admiralty Act, a right to bring a libel *in personam* was created as a substitute for an ordinary libel *in rem* and that the presence of the barge in the jurisdiction of the court was not essential to such jurisdiction *in personam.*

The first section of the Suits in Admiralty Act provides that no vessel or cargo owned by the United States "shall hereafter, in view of the provision herein made for a libel in personam; be subject to arrest or seizure by judicial process in the United States or its possessions."

The second section provides that in cases where, if such vessel were privately owned, a proceeding in admiralty could be maintained, a libel *in personam* may be brought against the United States, provided the vessel is employed as a merchant vessel or a tugboat. The suits are to be brought in the United States District Court where the libelants live or have their principal place of business in the United States, or in which the vessel or cargo charged with liability may be found. Provision is made for manner of service and, upon application of either party, for the transfer of such libels to any other district in the discretion of the court.

By the seventh section of the act, if any vessel or cargo of the United States is seized by process of a court of any country other than the United States, the Secretary of State of the United States in his discretion, upon request of the Attorney General, may direct the United States consul residing near the port of seizure to claim immunity from such suit and seizure and to execute a bond on behalf of the United States as the court may require for the release of the vessel or cargo.

The District Court on the facts stated held that it was without jurisdiction under this statute to entertain a libel *in personam* against the United States. We agree with that holding. The first section of the act is limited in its inhibition of seizures of vessels and cargoes of the United States to ports of the United States and its possessions. The second section is *in pari materia,* and the same limitation must be implied in its construction. This act was passed to avoid the embarrassment to which the Government found itself subjected by the Act of September 7, 1916, c. 451, 39 Stat. 728, by the ninth section of which vessels in which the United States had an interest and which were employed as merchant vessels were made liable as such to arrest or seizure for enforcement of maritime liens. *The Lake Monroe,* 250 U. S.

246. It was intended to substitute this proceeding *in personam,* as the first section of the act expressly indicates, in lieu of the previous unlimited right of claimants to libel such vessels *in rem* in the ports of the United States and its possessions. Congress had no power, however, to enact immunity from seizure in respect of such vessels when in foreign ports, and therefore the embarrassment of seizures was to be mitigated in another way, *i. e.,* by claiming immunity on international grounds and, if that failed, by stipulation or bond in the name of the United States. The provisions of the seventh section confirm the construction by which provisions of the second section are limited in their application to vessels within the jurisdiction of the United States.

A number of important questions as to the construction of this statute have arisen in other cases, and the argument before us has taken a wide range. Those questions do not require decision here, and we do not decide them. All we hold here is that the District Court was right in construing the second section of the Suits in Admiralty Act not to authorize a suit *in personam* against the United States as a substitute for a libel *in rem* when the United States vessel is not in a port of the United States or of one of her possessions.

*Affirmed.*