### CARROLL v. UNITED STATES et al.
### No. 121.

Circuit Court of Appeals, Second Circuit.

Feb. 9, 1943.

Russell C. Gay, Mathias F. Correa, U. S. Atty., and Silliman, Gay & Silliman, all of New York City (Sherwood E. Silliman, of New York City, of counsel), for appellants.

Silas B. Axtell, of New York City (Dominick Blasi, of New York City, of counsel), for appellee.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the United States and the Waterman S. S. Agency, Ltd., from a decree in the admiralty awarding damages against both respondents for personal injuries suffered by the libellant while he was a steward on board the S. S. "Gallant Fox," a vessel owned by the United States, and operated by the Agency under the Panamanian flag. The libel was filed under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., and alleged that the vessel at the time of the filing of the libel "is in or soon will be within the jurisdiction of the United States and of this Court": i. e. the Southern District of New York; and that the libellant had been scalded by hot coffee while on duty as a steward on the 4th day of December, 1941, his injuries being caused by negligently putting a coffeepot upon the floor of the galley during a storm. The libel contained a second count for failure to give medical care to the libellant while on board and after the ship docked, and a third count for maintenance and cure. The libel was filed on March 10th, 1942 and was amended at the trial on June 23, 1942, by striking out an allegation that the libellant elected to proceed in rem, and adding that the suit was brought, not only under the Suits in

Admiralty Act, but under the Jones Act, § 688, Title 46 U.S.C.A., and under "General Maritime Law." The case was tried to a judge and the following facts appeared:

The libellant, a citizen of Eire where he had a wife and family, signed articles as captain's steward for a voyage on the "Gallant Fox" on the 19th of November, 1941. The ship left port on the 28th and experienced very heavy weather on the 4th of December, with winds of hurricane force which made her roll 45 degrees or more. On the morning of that day the cook had for safety set a pot of coffee on the floor of the galley, taking it from the range where he thought that it would be more likely to upset. The libellant went into the galley to get the captain's breakfast and, while so engaged, a roll or lurch of the ship sent the coffee-pot sliding along until it struck his right foot and upset the coffee into his boot, seriously scalding him. He suffered great pain from the burn and from such dressings as the master and officers were able to give him, until the ship reached New York on the 23rd. He was not taken ashore till the evening of the next day, when he was removed to the Broad Street Hospital, and two days later to the Marine Hospital, where he was treated until February 17, 1942, when he was discharged with the prognosis that he would be able to walk after about three weeks. While in the hospital he was treated in various ways, among others by injecting alcohol into the nerve ganglia which control the blood vessels of the ankle; the effort being in this way to improve the circulation. In April and May he got jobs as a waiter in the City of New York; but in each case after at the most three days he suffered so much from pain and the swelling of his ankle that he was unable to keep on.

Several doctors testified to the extent of his injuries: one, called by him, swore that, having suffered a third degree burn, his disability would be permanent and that he would never be able to stand for seven or eight hours upon his foot. (That he had suffered a third degree burn appeared from the records of his case in the Marine Hospital.) The respondents, on their side, called three doctors; the first of whom said that the libellant had suffered no worse than second degree burns, but who did not undertake any prognosis. The other two also said that he had only second degree burns, but these said that he had suffered

no permanent loss of function. His pay upon the "Gallant Fox" was $45.00 a month, plus $45.00 war bonus. He had intended to return to Eire with the ship, and, after his discharge from the hospital, his further stay in New York was not accounted for.

The ship was not in the United States when the libel was filed; but upon the trial the parties stipulated that she was then "in the Harbor of New York at Jersey City." The judge found that the libellant had been "since December, 1941, a resident of the United States and of the Southern District of New York." He also found that the suit was properly brought under the Jones Act in personam and under the Suits in Admiralty Act, and that the cook had been negligent in putting the coffee-pot upon the floor of the galley while the ship was rolling so heavily. He awarded the libellant for his pain, past and future, $5,000; he found that he had suffered a permanent disability of one-third of his earning power, which was about $1,400 a year, and that his disability amounted to $480 a year, which, capitalized at 4%, came to about $8,000; and he therefore made a total award of $13,000.

As against the United States the decree must be reversed and the libel dismissed. Blamberg Bros. v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346, decided that it was a condition upon substantive jurisdiction under the Suits in Admiralty Act that the vessel should be within the United States when the libel was filed. The "Gallant Fox" was not shown to have been within the United States at that time and the district court was without jurisdiction. This would be equally true, even though we were to construe the condition as applicable only when the right asserted against the United States is in rem. We do not mean to suggest that the condition is so limited, but we need not decide the question, because, so far as appears, the acts of the Waterman Steamship Agency would not have charged the United States in personam if it had been a private owner. The contract is not before us and upon this record the only possible liability would have been in rem. It is true that the ship was within the United States at the time of the trial, so that a libel then filed would have been within substantive jurisdiction of the district court; and conceivably—since the filing of a second libel would be mere matter of

form—we might dispense with it, in spite of the strictness with which any conditions upon the consent of the United States to be sued must be observed. But that issue also we need not pass upon, for, even assuming that the later presence of the ship conferred substantive jurisdiction upon the court, the venue of the suit was wrong in any event. The libellant was not a "resident" of the Southern District of New York; his stay there until February 17, 1942, had been in hospitals and involuntary; and thereafter—if any inference at all is permissible—his continued sojourn is to be ascribed to his interest in the outcome of this suit. Although "residence" generally implies a less permanent attachment to the place than "domicil," it always demands a connection more permanent than anything which the libellant proved here. Nor did it serve to fulfill the alternative condition of venue under § 2 of Suits in Admiralty Act that the ship was "at Jersey City" at the time of the trial—again assuming that venue was to be judged as of that date. We should have no ground for saying that the stipulation meant any more than that she was at that time moored to a wharf in that city; and if so, she was not within the jurisdiction of the Southern District of New York, whether the western boundary of that district be the Jersey shore (The Norma, D.C., 32 F. 411), or the thread of the Hudson River. The Rosemary, 3 Cir., 26 F.2d 354. Hence the judge should have dismissed the libel as to the United States, either because it lacked substantive jurisdiction, or because the suit was brought in the wrong district.

█ Before the decision of the Supreme Court in Brady v. Roosevelt Steamship Company, 317 U.S. ——, 63 S.Ct. 425, 87 L.Ed. ——, the same reasoning would have led also to the dismissal of the libel as against the Waterman Steamship Agency, for United States Shipping Board Merchant Fleet Corporation v. Lustgarten, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451, had held that the Suits in Admiralty Act applied, not only to corporations all of whose shares were owned by the United States, but to those which were managing or operating vessels owned by the United States in its behalf—at least in cases where the loss fell upon the United States. However, in Brady v. Roosevelt Steamship Co., supra [317 U.S. ——, 63 S.Ct. 427, 87 L.Ed. ——], the court, although recognizing that the judgment in the Lustgarten case did "support the view adopted by the court below," held that "that position is untenable and that the Lustgarten case * * * must be considered as no longer controlling." Hence the libellant was free to sue the Agency in the Southern District of New York under the Jones Act if it had its principal office in that district. § 688, Title 46, U.S.C.A. It is true that the record shows only that it had "an office" within the district, but the chance is so small that the principal office of a New York corporation engaged in the steamship business should be in another district of the state, that we may assume the contrary until an objection be raised. Moreover, since the ship was American owned—even though under foreign registry—the libellant, an alien, may avail himself of the Jones Act. Gerradin v. United Fruit Co., 2 Cir., 60 F.2d 927. Thus we come to the merits.

█ It appears to us that the judge was right in holding that it was negligent for the cook to set the coffee-pot upon the floor of the galley in such heavy weather. It is irrelevant whether that was less dangerous than setting it on the range; it was practically certain to slide along the floor and to upset if it struck anyone in its peregrinations. It was necessary for the stewards to enter and leave the galley to discharge their duties, which they could not do while keeping an eye upon a roving coffee-pot. Assuming that the crew must have coffee in all weathers, prudence plainly required the pot to be put somewhere where it could not pour out its contents upon those who had to use the galley; or, if there was no such place, not to brew more at a time than was to be drunk at once. It was not permissible to subject the stewards or any other members of the crew to the unpredictable onsets of so dangerous an object.

█ There remains therefore only the propriety of the award. As to the award for pain—$5,000—we do not see how we can interfere. The libellant, although not disposed to minimize his sufferings, had endured a great deal, not only from the burn itself, but from its treatment both on the voyage and in the hospitals. Whether he would continue to suffer in the future was indeed doubtful; it turned upon how far his general condition would improve, a matter we reserve for the moment. Even if it does not improve, the award is larger than we should have been disposed to make, had the original decision been

ours; but we cannot say that, upon an issue so difficult of quantitative determination, it was so plainly out of measure as to be "clearly erroneous." Petterson Lighterage & T. Corp. v. New York Central Railroad Co., 2 Cir., 126 F.2d 992. The award for loss of earning power altogether depended upon the permanency of the injury. The libellant said that after he left the hospital, he was unable to stand upon his feet for the six or seven hours daily which were required of him as a waiter, his only calling. There was a square conflict between the physicians upon his chances of improvement, and so far as we can see, no antecedent reason to prefer one prognosis to the other. That being so, the judge's choice must stand, whatever our personal doubts. But even though we assume that the incapacity was permanent, the award was wrong, for it presupposed that the war bonus would continue for the whole period of the libellant's future working life— certainly an unwarranted assumption. Subtracting one-third of the war bonus— $180—we arrive at $300 a year, instead of $480, as the measure of his loss in earning capacity. That is five-eighths of $480, and five-eighths of the award is $5,000. To this we should add the present value of one-third of the war bonus for, say, four years, $700; making $5700 in all. To that sum we reduce the award for loss of earning power.

Decree reversed and libel dismissed as to the United States.

Award reduced to $10,700 as against Waterman Steamship Agency, Ltd. and decree, so modified, affirmed.

No costs.