**ABBOTT v. UNITED STATES.**

District Court, S. D. New York.

May 24, 1945.

George J. Engelman, of New York City, for libelant.

John F. X. McGohey, U. S. Atty., of New York City (Edward J. Behrens and Charles H. Lawson, both of New York City, of counsel), for respondent.

KNOX, District Judge.

Libelant, a seaman employed on board the steamer Beauregard, a vessel owned by the United States, here sues for damages, allegedly sustained through negligence on the part of the ship.

On August 15, 1943, the day of libelant's injury, the vessel lay at anchor near Methel, Scotland. She had crossed the Atlantic in convoy and was about to proceed to another port. Shortly before the hour of departure, and while libelant and another seaman, named Senecal, were standing the gangway watch from 12 m. to 4 p.m., the anchor ball of the Beauregard, which had been suspended from a halyard attached to the vessel's forestay by a pulley about 20 feet above the forward hatch, fell to the deck. The second officer, then in charge of the ship, ordered the libelant and Senecal to lift the anchor ball into its former position, or take it to the bridge. They immediately went to the forward deck, and there observed that the halyard to which the anchor ball had been attached, had parted, with one of its ends fastened on deck, and the other being snarled in the pulley rigged to the forestay. This latter appliance was a steel line having a diameter of three inches, and in good condition.

Libelant, after a futile endeavor to pull out the snarl at the pulley, and thus disengage the halyard, decided to shinny up the forestay in order to rig the line to which the ball had been secured. Having done so, and being an experienced seaman, he grasped the forestay with his hands and feet, and in a semi-horizontal position on the under side of the line, attempted its ascent, shifting his position first with his hands and then with his legs. When his hands had passed a point on the forestay, and above the position of a steel clamp attached thereto, but which did not hold the pulley through which the halyard had been reaved, libelant's feet slipped backwards, and one of his ankles came in contact with the clamp. The pain arising from the resulting cut was such that Abbott lost his hand grip, fell onto a hatch cover on deck and suffered severe and painful injuries. The use to which the clamp that allegedly caused libelant to fall had been put does not appear.

After his accident, Abbott received first aid treatment on board the vessel, and shortly thereafter, was taken in a launch to Cameron Hospital at Windygates, Fife. The following day he was transferred to Strachathro Hospital, Brechin, Angus, where he remained until January 1, 1944. He then embarked on the Queen Mary, arriving in New York nine days later, and was taken to the Marine Hospital, Staten Island, as an in-patient. Remaining there until March 27, 1944, he was transferred to the Seamens' Rest Centre at Gladstone, New Jersey, and remained there for three weeks. On his discharge from that institution, he came to New York for a while, and then went to Boston. On August 1, 1944, he became an in-patient at the Boston Marine Hospital, and was treated there until September 1, 1944. He received a final examination about three weeks thereafter, and was then discharged as fit for service in most kinds of shore work.

The main allegation of fault on the part of respondent is that it failed to provide libelant with a safe place in which to work and "in ordering and permitting (him) to ascend the forestay hand over hand; in maintaining the forestay, its appurtenances and attachments in such a defective and unseaworthy condition that the anchor ball fell to the deck, and in failing and neglecting to take the customary steps to protect the libelant's person."

In addition to asking that he be indemnified for his injuries, libelant also seeks a recovery for his maintenance and cure.

The United States made a general denial of the allegations in the libel, and then pleaded that Abbott's own negligence, and the assumption of the risks of his employment, bar his claim for indemnity. It also avers that when the libel was filed, the Beauregard was not within the territorial jurisdiction of the United States. For this reason, it is urged that this court is without authority to pass upon the merits of the libelant's claims. As respects this contention, it is to be noted that the libel was filed April 3, 1944, and its fourth paragraph alleged that:

"The said S. S. Beauregard at the time of serving and filing of this libel is within or is about to come within the territorial jurisdiction of the United States and of this Honorable Court."

It contained, however, no allegation as to libelant's place of residence.

On June 9, 1944, respondent answered the libel. In addition to its denials of fault, it set forth as a first, separate and complete defense:

"That the Court is without jurisdiction in the matter."

On June 20, 1944, pursuant to stipulation of the parties, an order was entered permitting the libel to be amended so as to allege that:

"The libelant resides within the jurisdiction of this court."

Respondent thereupon denied any knowledge or information sufficient to form a belief as to such allegation. Trial was had on March 26 and 27, 1945.

From the outset of the litigation, respondent has insisted, and continues to insist, that the court is without jurisdiction to proceed to a decision on the factual issues of the case. As a result, the matter of jurisdiction must be determined.

In the course of the trial, libelant's advocate conceded that libelant "is not—he was not, in my judgment, and I have so stipulated, a resident of this district."

On hearing this statement, I inquired, "Where was he living at the time?" and Mr. Engelman replied:

"Well, here were the facts your Honor. He was over at the Marine Hospital at Stapleton, as you know, when he came over, from January 10 (1944) to March 27; he was then out at Gladstone (New Jersey) for approximately * * * three weeks. There was some notation that he was to take or would take some treatment at Hudson and Jay Streets. And it was thought that he would take up his residence here, in view of the fact that he couldn't go to his children anyway, they were up in Nova Scotia; but he did finally decide to go back to Boston, and he has been in Boston ever since. Those are the facts."

Mr. Behrens, representing respondent, then added:

"I might say that every record I have ever seen gives his address as 32 Highland Court, Malden, Massachusetts. He has never described any other address, so far as I know."

When libelant signed on the Beauregard, he gave Nova Scotia as his place of residence, and on October 4, 1944, he represented to the Merchant Marine Hearing Unit of the United States Coast Gaurd, located at Boston, that he resided at Malden, Massachusetts.

As has been seen, during most of his stay in this locality, he was confined in a hospital. Aside from this, his sojourn in New York can be ascribed to his interest in the trial of this action. There is, therefore, no basis on which to find that at the time of suit he was, or ever became, a resident of this district.

It is argued, nevertheless, that his non-residence here is, at most a mere matter of venue, and that respondent, by pleading to the merits, has waived objection thereto. Commercial Trust Company v. United States Shipping Board, 2 Cir., 48 F.2d 113; Kunglig Jarnvagsstyrelsen v. United States, 2 Cir., 19 F.2d 761. The general rule that I am thus asked to follow is, I think, inapplicable here. Respondent's response to libelant's averment of residence in this district was a material fact in issue, and it, if libelant is to prevail, like other affirmative and material allegations of the libel, must be proved.

In other words, the fact that libelant did not reside within this district did not appear on the face of his libel, and respondent was thus in no position to raise the question before the date of trial. See Roberts v. Lewis, 144 U.S. 653, 12 S.Ct. 781, 36 L.Ed. 579.

Furthermore, libelant has failed to show that on the date his libel was filed, the Beauregard was within the territorial jurisdiction of the United States. The proof indicates that following libelant's accident, the ship first came to this country some time about June, 1944. On the 17th day of

that month, she signed on a crew at this port. But, there is no evidence that she was then in this district. Apparently, she did not come here until November 25, 1944, when she docked at Pier 7, North River. She sailed again on December 12th.

On this state of facts, this case falls squarely within the ruling of the Appellate Court of this Circuit in Carroll v. United States et al., 133 F.2d 690, where following Blamberg Bros. v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346, it was held that a condition of substantive jurisdiction in suits under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. is that the vessel should be within this country when a libel seeking to hold the United States is filed. If it be, as the Court intimated, that this difficulty might possibly be overcome by dispensing with a new libel if the ship were within the country at the time of trial, it appears that the Beauregard was not then here. But, assuming that the ship's presence at some other port during the pendency of the libel conferred substantive jurisdiction on this court, the venue of the suit is wrong, and the libel must be dismissed for lack of jurisdiction. Libelant's argument that Carroll v. United States was erroneously decided falls upon ears that necessarily must be deaf. The conclusions of my own Appellate Court, when they deal with a subject matter that is judicially before me, cannot be disregarded; and, in saying this, I do not, in any sense, imply that the Circuit Court of Appeals was in error in its decision of the Carroll case.