SCHNELL et al. v. UNITED STATES.

THE ILLAPEL.

No. 17119.

District Court, E. D. New York.

Oct. 7, 1946.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Reid, Cunningham & Freehill and William J. Tillinghast, Jr., all of New York City, of counsel), for respondent in support of exceptions.

Joffe & Joffe and Joseph Joffe, all of New York City, for libelants.

KENNEDY, District Judge.

Respondent excepts to a libel filed in this Court on June 26, 1944. In substance, the libel under attack alleges a claim against the United States "as owner of the steamship 'Illapel'", based upon the fact that a cargo of melons and onions, which arrived in the port of New York on that steamship on May 15, 1944, was discharged in defective condition as a result, so it is said, of the negligence of the ship in respect to loading, stowing, custody, care, and because of her unseaworthiness. The third article of the libel alleges that the bills of lading covering the shipment were "issued, signed and delivered to the shipper by the duly authorized representative of the steamship 'Illapel' marked 'Bills of Lading No. 17 and No. 18'".

The libel was of course filed under the Suits in Admiralty Act, Act of March 9, 1920, 46 U.S.C.A. § 741 et seq.

It is specifically alleged in the libel that the libelants are members of a partnership, and that all of them, except one, reside in this district.

On September 22, 1944 the respondent answered and said, among other things (Article Seventh), that it "does not contest the admiralty and maritime jurisdiction of the United States and of this Court".

In support of its present exception, respondent files affidavits and exhibits establishing that on the 27th day of August 1943 the respondent United States of America transferred the steamship "Illapel" to the Republic of Chile on a demise charter basis. The Republic of Chile, in turn, assigned the ship to the Compania Sud-Americana de Vapores for operation, so that at the time of the contract of affreightment upon which the libel is based, the United States was merely the owner. All of this, of course, would tend to establish that there could be no liability in personam against the United States, but only a liability in rem.

Respondent goes further, and in its affidavits asserts that on May 31, 1944, prior to the filing of the libel under attack, the "Illapel" sailed from the port of New York and that on June 26, 1944, when the libel was filed, the ship was at a point between Chicama, Peru, and Valparaiso, Chile.

Upon the basis of the facts established by its affidavits and exhibits, respondent argues in support of its exception that there is no jurisdiction in this Court, because the only liability which could possibly be asserted against it is a liability in rem, and at the time of the filing of the libel the ship was not within the territorial waters of the United States (citing Blamberg Bros. v. United States, 1923, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346; Carroll v. United States, 2 Cir., 1943, 133 F.2d 690, and other cases).

Libelants do not seriously controvert either respondent's argument that it is liable only in rem, or its assertion that when the libel was filed the ship was not within the territorial waters of the United States. They submit an affidavit alleging that the exceptions are filed too late, presumably because all preparations for trial have been completed. They say also that "Illapel" is at this moment within the territorial waters of the United States, and they ask permission to amend the libel in such fashion as to assert that the ship "is now or during the pendency of the process hereunder will be within the jurisdiction of the United States", and that "Libellants elect to have this suit proceed in accordance with the principals (sic) of suits in rem and also in personam".

Assuming that the libel is defective in its present condition, the effect of the amendment proposed by the libelants would be to extend the two-year statute of limitations, 46 U.S.C.A. § 745, and on this ground respondent opposes it.

If exceptions to libels are closely analogous to demurrers it is clear that I ought to concern myself only with what is alleged within the four corners of the libel, and that I should ignore respondent's affidavits, certainly on disputed issues of fact. The Sydfold, 2 Cir., 1936, 96 F.2d 611. There have been cases where no objection to the practice of considering "ex-ceptive allegations" was interposed in cases like this (Pfeil v. United States, D.C.E.D. N.Y., 1923, 287 F. 265), but libelants in the present case do object strenuously, even though they have filed a cross-affidavit embodying an application to amend. Benedict (6th Ed., Vol. 2, Sec. 334) says in a footnote that Judge Hough in an unreported case (L. Littlejohn & Co., Inc. v. United States, D.C.S.D.N.Y., 1922, 49 F.2d 467) criticized the practice even of making suggestions of immunity from suit to the Court, and suggested that a proper mode of procedure would be to file an answer containing exceptive allegations, and then ask for a preferential trial on the issue raised.

I am inclined to think that in dealing with this exception I should ignore everything set forth in the supporting affidavits. In this case the answer filed by respondent contains nothing whatever in the way of an exceptive allegation which parallels the averments of the affidavits now submitted, although over two years have elapsed since the filing of that answer and the statute of limitations has in the meantime run out. On the contrary, the answer contains (Article Seventh) an affirmative statement that respondent "does not contest the admiralty and maritime jurisdiction of the United States and of this Court". I do not say that the statement last mentioned is a waiver of the jurisdictional point. But I am reluctant to consider affidavits after the lapse of two years in view of the condition of the pleadings, because I think to do so would be unfair ("bad practice").

I turn therefore to the language of the libel itself. Respondent, as I have observed, says it is defective because (1) the only possible liability against the United States is in rem, (2) there is no allegation that "Illapel" was within the territorial waters of the United States and therefore it is fatally defective as a pleading. Respondent also criticizes the absence of an allegation that the libelant intends to proceed in accordance with the principle of libels in rem, 46 U.S.C.A. § 743. Dealing with the last point, the language of the statute persuades me that the absence of such a specific allegation is not

necessarily fatal where it is generally indicated in the pleading that the libelant is invoking in rem principles and of course the statute provides that a libelant who takes this course is not precluded from seeking personal relief in the same suit.

Surely I have no right, where a pleading under the Suits in Admiralty Act is concerned, to assume that libelants will never be able to establish anything except a liability in rem. If that is so, how can it be said in advance of trial that failure of the libelants to allege that the ship is within the territorial waters of the United States is fatal? It is true that this was the square holding in the Isonomia, 2 Cir., 1922, 285 F. 516. But in Nahmeh v. United States, 1925, 267 U.S. 122, 45 S.Ct. 277, 69 L.Ed. 536, the authority of the case, at least on the pleading point, seems to have been shaken. The Supreme Court, making mention of the fact that under the Suits in Admiralty Act causes of action in rem might be united with those in personam, says the venue section of the statute permits suit either in the place of residence of the parties suing or any one of them or the principal place of business or the place where the vessel or cargo is found, all in the alternative, and therefore as a pleading a libel is sufficient even though it would have set forth a cause of action in rem between private parties, and was brought in the place of residence of the libelant. It is true that in the Nahmeh case mention is made of the fact that the vessel must be within the jurisdiction of the United States, but there it seems to me that the Court was talking about the ultimate right to relief rather than the form of the libel. In fact, the practice followed in that case and the condition of the pleadings created a situation not unlike what is found here. The opinion indicates that there must have been an allegation in the libel that Nahmeh was a resident of the Eastern District of New York. The United States appeared specially and insisted that the libel was defective because it did not also allege that the steamship "Quinnipiac", on which Nahmeh was injured, was in the Eastern Dis-trict of New York. The exceptive allegation was that the ship was in the Southern District of New York. Nahmeh then asked that the suit be transferred to the Southern District. His motion was denied and the libel was dismissed. The Supreme Court reversed and the cause was remanded to the Eastern District "for further proceedings". To me this is a holding that a libel, even in accordance with in rem principles, is sufficient on its face under the Act if it alleges libelant's residence in the district of suit.

The ultimate outcome of the litigation, if only in rem liability can be demonstrated, is another matter. Blamberg Bros. v. United States, 1923, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346; Carroll v. United States, 2 Cir., 1943, 133 F.2d 690. On this question it does not seem to me that McGhee v. United States, 2 Cir., 1946, 154 F.2d 101, is very much in point because there the only liability was in personam.

It is a matter of regret to me that this controversy came to me in its present form. It is only fair to say that the strong likelihood is that the United States is liable, if at all, only in accordance with in rem principles. It may well be that under the Blamberg case the absence of the ship from the territorial waters of the United States at the time of the filing of the libel, a fact which is not seriously controverted, would be decisive of the whole issue and make a long trial unnecessary. On the other hand, to go into this question on the basis of affidavits when the answer does not even suggest the point, and two years have elapsed, would be to sanction an extremely unwholesome practice. It is no part of my function to make suggestions as to the future course of the litigation but it ought to be perfectly possible when the case is reached to try the issue of jurisdiction first.

Since I have concluded that I must overrule the exception, I suppose I am not called upon to deal with the libelants' application to amend. Accordingly I deny this without prejudice.