**F. E. GRAUWILLER TRANSP. CO., Inc., v. EXNER SAND & GRAVEL CORPORATION et al.**

**EXNER SAND & GRAVEL CORPORATION v. GALLAGHER BROS. SAND & GRAVEL CORPORATION et al.**

Nos. 203, 204, Docket 20504, 20505.

Circuit Court of Appeals, Second Circuit.

June 4, 1947.

[4] Wingate v. General Auto Parts Co., D.C.W.D.Mo., 40 F.Supp. 364, 365; Booth v. Montgomery Ward & Co., D. C.D.Neb., 44 F.Supp. 451, 455, 456.

Before L. HAND, SWAN and CLARK, Circuit Judges.

James E. Freehill, and Reid, Cunningham & Freehill, all of New York City (Renato C. Giallorenzi, of New York City, of counsel), for appellant.

Edmund F. Lamb and Purdy & Lamb, all of New York City, for Exner Sand & Gravel Corporation.

Christopher E. Heckman, and Foley & Martin, all of New York City, for Gallagher Brothers Sand & Gravel Corporation.

L. HAND, Circuit Judge.

Judge Galston's opinion in the district court is reported,[1] and to it we may, and do, refer for a statement of the pleadings and an outline of the facts. We shall make it the basis of our discussion, and proceed at once to the disputed questions.

Although the judge found the scow seaworthy when her owner delivered her to the charterer in December, 1942, he made no finding on that issue as of the time she capsized—September, 1943. We cannot tell whether he accepted the testimony of the witness, Skogen, that "there was water running, but not a stream" on the inside of the scow when he went below to examine her. If it was a part of the charterer's case against the dredging company that the scow must be seaworthy at the time when the charterer left her alongside the stakeboat, we should feel obliged to remit the case for a finding; we need not because the issue is immaterial. There was ample evidence to support the finding that it was the practice of the dredging company when it had loaded a scow which had no bargee on board, and had towed it out to the stakeboat, to assign a "dredge watchman to go out to such scows regularly and pump them out." Indeed, the testimony was that such scows were constantly watched and guarded. This finding puts an end to the argument that the dredging company owed no duty to the scow; for it is not true that no vessel owes any duty to care for a scow or barge unless she is in bail; there are other sources of such a duty. Whether at any time there was basis in our decisions for a contrary view, beginning at least with The William Guinan Howard,[2] we have decided a number of times that a tug—which is not a bailee—will often become charged with a duty of caring for her tow.[3] True, there is no set measure of this liability, or of the occasions which will bring it in existence; as we said in Thorne, Neale & Co. v. Reading Co., supra,[3] "the question is of the reasonable implications from that undertaking" i. e. the towing contract. Although of course no contract of towage was here involved, the situation was of the same general kind and should be similarly dealt with. The judge found that to load a scow with wet sand and gravel, and to clog the scuppers—which is done lest the water as it drains away may carry off the sand with it—was to invite the seepage of the water through the deck into the hold. A scow delivered for such a purpose needs watching, and in this instance the dredging company abundantly assumed that duty; but no express assumption was necessary, we should have imposed it if it had not been deliberately assumed; the situation would make any other conclusion intolerable. Upon seeing that the scow had no bargee on board, the dredging company was put to its choice: either to refuse to load her at all, unattended as she was, or to give her such attention as a competent bargee would have given. Whether she was unseaworthy because she leaked more than such a scow should, was a factor in determining what attention she required; but otherwise it was not important. It could become so only in the event that the dredging company had been misled by reliance upon her supposed seaworthy condition, and had exercised a care commensurate with that reliance. The evidence to the contrary was overwhelming. Christiansen found the scow aleak and reported it to Skogen who in turn reported it to the "dredge operator," Ericksen, who sent out an employee to attend to it.

[1] The Henry E., D.C., 61 F.Supp. 327.

[2] 2 Cir., 252 F. 85.

[3] Doherty v. Pennsylvania R. Co., 2 Cir., 269 F. 959; Harris v. Port Reading Co., 2 Cir., 45 F.2d 100; Du Bois Sons Co. v. Pennsylvania R. Co., 2 Cir., 47 F. 2d 172; Thorne, Neale & Co. v. Reading Co., 2 Cir., 87 F.2d 694; The Helderberg, 2 Cir., 94 F.2d 949; The Tillie S., 2 Cir., 123 F.2d 899.

■ That the charterer and the owner were at least in second degree liable is also clear; each knew that the bargee had quit and both left it to the dredging company to supply his place. Two questions arise: whether the damages should be divided between them and the dredging company; if not, whether if secondarily liable that liability should be equally divided; or whether one should be secondarily liable and the other tertiarily, as the judge decided. Although the charterer has assigned error because it was not held tertiarily liable and the owner secondarily, it did not suggest that the secondarily liability should be equally divided, and we do not pass on that question. We come therefore to whether the damages should not be equally divided into three parts. It is true that the charterer and owner each had a share in the loss in the sense that, if they had done their duty, presumably it would not have happened. That did not make a case for divided damages between them and the dredging company, however; for their lapse was known to that company, and was of a kind with which it was accustomed to deal, as Leifheit expressly testified. Being aware that the scow was unprotected, its duty was by so much increased: as we have said, it might refuse her altogether; but it might not load and then neglect her. Its position was analogous to that of a person who, being aware of the results of another's negligent failure to look out for himself, proceeds in disregard of it.

■ Lastly, the dredge was herself liable in rem. Had she been a towing tug, she would have been,[4] and we cannot see any more reason here to deny this incident of a tower's liability than to deny the liability itself. In the suit of Grauwiller against Exner, the dredge has already filed a stipulation; but apparently she was not arrested in the suit of Exner v. Gallagher. Nevertheless, she may be arrested pending an appeal: whatever would be the procedural difficulties of such a course in an action, there is still enough vitality in the doctrine that an appeal in the admiralty is a new trial, to allow an arrest pending appeal, as much as an arrest while the suit was in the district court. We have already denied the dredging company's motion for leave to reopen the case for more evidence; that application being quite without justification. Indeed, it is difficult to find an excuse for the appeals in any aspect.

Decrees affirmed.

---

4 The John G. Stevens, 170 U.S. 113, 18 S.Ct. 544, 42 L.Ed. 969.