## SCHNELL v. UNITED STATES.
### No. 134, Docket 20832.

Circuit Court of Appeals, Second Circuit.
March 1, 1948.
Writ of Certiorari Denied June 1, 1948.
See 68 S.Ct. 1346.

FRANK, Circuit Judge, dissenting in part.

480

Joffe & Joffe, of New York City (Joseph Joffe, of New York City, of counsel), for appellants.

J. Vincent Keogh, U. S. Atty., of New York City (Reid, Cunningham & Freehill, and Renato C. Giallorenzi, all of New York City, of counsel), for appellee.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the owners of a shipment of garlic carried from the port of Valparaiso in Chile, to the port of New York on the S. S. "Tubul" owned by the United States. The libel was filed in the Eastern District of New York where the libellants do business as a partnership under the firm name of H. Schnell & Co. and where three of the four partners reside. On the day of the trial the respondent was permitted to amend its answer to deny the jurisdiction of the court (admitted in the original answer) and to set up, as an additional defense, that the vessel was being operated under a demise charter and was not in the control of the United States on the voyage in question. At the conclusion of the trial the district court dismissed the libel on the ground (1) that the United States was not liable in personam because the vessel was operated under a demise charter, and (2) that the suit could not be maintained as an action in rem because the vessel was in Valparaiso when the libel was filed. The appellants contend that both rulings are erroneous.

There is no dispute as to the facts. The steamship was owned by the United States, was chartered by the United States to the Republic of Chile, and was manned, supplied and operated by the Chilean Line under a subcharter. The captain and crew were hired and paid by the Chilean Line; and it collected and retained the freights. The bills of lading, upon the alleged breach of which the suit was based, were issued by the Chilean Line and signed in its name "For the Master." When the libel was filed, August 13, 1945, the vessel was moored to a pier at Valparaiso. Subsequently, and during pendency of the suit it made six voyages to and from the port of New York and returned to the United States on February 23, 1947.

The appellant's argument that the charter was not a demise because of restrictions contained in Articles 16 and 24 of the charter party is not supportable. Article 16 provided that the charter shall be subject "to all regulations of general application in the trade issued by the United States with respect to cargoes, priority of cargoes, contracts of affreightment, rates of freight and other charges, and as to all matters connected with the operations of vessels in the trade." We understand this to refer to regulations which the United States in the capacity of a sovereign might impose as a war measure upon any ship engaged in the trade. See Horowitz v. United States, 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736. Such provisions should not be construed to make the charter party only a contract for the use of the vessel as distinguished from a lease of the vessel itself. The charterer was plainly given complete command and possession and consequent control over the navigation of the ship; this meets the test of a demise. Leary v. United States, 14 Wall. 607, 610, 20 L.Ed. 756; United States v. Shea, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403. Nor was control retained by the owner by reason of the requirement of Article 24 that certain specified clauses should be incorporated in the charterer's bills of lading. Such clauses' are relevant only to the in rem liability of the vessel. The district court was correct in holding that the charter was a demise. This being so, the mas-

ter is not the shipowner's agent and bills of lading signed by him bind the charterer but not the shipowner. Scruton on Charterparties and Bills of Lading, 14th ed. 59; Robinson on Admiralty 616, note 48; Schooner-Freeman v. Buckingham, 18 How. 182, 189, 15 L.Ed. 341. And this is true although the bill of lading contains no reference to the charter party and the shipper had no notice of its existence. Baumwoll v. Furness, [1893] A.C. 8; The Capitaine Faure, 2 Cir., 10 F.2d 950, 962, certiorari denied, sub nom. Societe de Navigation a Vapeur France Indo-Chine v. Cooper & Cooper, Inc., 271 U.S. 684, 46 S.Ct. 634, 70 L.Ed. 1150; Schnell v. United States, D.C.E.D.N.Y., 69 F.Supp. 877. Nor is the shipowner liable in personam for torts committed by the agents of the demise charterer. Muscelli v. Frederick Starr Contracting Co., 296 N.Y. 330, 73 N.E.2d 536; Vitozi v. Balboa Shipping Co., 1 Cir., 163 F. 286. Consequently, under the proven facts, the United States cannot be held liable in personam for damage to the appellants' cargo.

■ In reliance on Blamberg Bros. v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346, the court ruled that it was without jurisdiction as to any in rem cause of action. That case held that section 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 742, does not authorize a suit in personam as a substitute for a suit in rem if, when the libel is filed, the vessel is not in a port of the United States or one of its possessions. As Chief Justice Taft explained, both in his Blamberg opinion and in later cases, the main purpose of the Act was to relieve the United States from the inconvenience to which it was subjected by the arrest of its merchant vessels, and to substitute an equivalent remedy in personam for the right in rem against the vessel.[1] The statute provides that "in cases where if such vessel were privately owned or operated * * * proceeding in admiralty could be maintained *at the time of the commencement of the action herein provided for,* a libel *in personam* may be brought against the United States * * *."[2] The sovereignty of the United States raises a presumption against its suability unless the conditions for suit prescribed by the statutory language are satisfied.[3] In Nahmeh v. United States, 267 U.S. 122, 45 S. Ct. 277, 69 L.Ed. 536, in construing liberally the venue provisions of section 2, it was held that the vessel must be in some United States port, although she need not be in a port within the district where the suit was brought. Concededly "at the time of the commencement of the action" at bar, the "Tubul" was in a foreign port.

■ As a suit in rem there was also another defect in the appellants' libel in that it contained no allegation of an election to proceed in accordance with the principles of libels in rem.[4] In form it was only a libel in personam; it contained no allegation that during the pendency of the suit, the vessel would be within the jurisdiction of the court,[5] and as to jurisdiction said only that "the premises are true and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court." Hence service of copies of the libel upon the United States at-

[1] Blamberg Bros. v. United States, 260 U.S. 452, 458, 43 S.Ct. 179, 67 L.Ed. 346; Shewan & Sons v. United States, 266 U. S. 108, 111, 45 S.Ct. 45, 69 L.Ed. 192; Nahmeh v. United States, 267 U.S. 122, 124, 45 S.Ct. 277, 69 L.Ed. 536; Eastern Transportation Co. v. United States, 272 U.S. 675, 691–2, 47 S.Ct. 289, 71 L. Ed. 472.

[2] 46 U.S.C.A. § 742, italics added. The section also provides that the libellant shall forthwith serve a copy of the libel on the United States attorney for the district of suit and send a copy by registered mail to the Attorney General of the United States.

[3] As stated in Eastern Transportation

Co. v. United States, 272 U.S. 675 at 686, 47 S.Ct. 289, 71 L.Ed. 472, it was this view which led to the Blamberg decision.

[4] Section 3 of the Act, 46 U.S.C.A. § 743, provides: "If the libellant so elects in his libel, the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. Election so to proceed shall not preclude the libellant in any proper case from seeking relief in personam in the same suit."

[5] Such an allegation was contained in the libel in the Blamberg Bros. case.

torney and the Attorney General gave no notice that the suit was a substitute for an action in rem. Consequently the admission of jurisdiction in the respondent's original answer was an admission only with respect to the asserted in personam liability. Under such a libel we cannot accept the appellants' contention that the temporary presence of the vessel within United States waters during the pendency of the suit would automatically confer on the court substantive jurisdiction over the in rem cause of action. No such result would follow, even if the vessel were privately owned and operated. In litigation between private parties a libellant with only an in rem cause of action, who filed his libel during the absence of the vessel, must at some time during the pendency of the suit cause her to be arrested; if arrest were not effected during her temporary presence and she had left before the date of trial, it is inconceivable that the court would have jurisdiction to enter a decree in rem. The statute substitutes for seizure of the vessel the filing of a libel containing an allegation of election to proceed in rem and the service of copies of the libel on the United States attorney and the Attorney General. Since the libel contained no such allegation, the service of copies did not give the required notice that in rem liability of the vessel was asserted.

■ At the trial the libellants moved to amend their libel to conform to the proof and this was allowed. This may be assumed to be equivalent to an amendment electing to proceed in rem, and if the "Tubul" was then within United States waters,[6] there is presented the question suggested but not decided in our opinion in Carroll v. United States, 2 Cir., 133 F. 2d 690, upon which the appellants primarily rely. We there followed the Blamberg decision and dismissed the libel against the United States because the vessel was not in United States waters when the libel was filed, although at the time of the trial she was at dock in Jersey City. But our opinion suggests that had the libellant been a resident of the southern district,[7] the presence of the vessel in Jersey City at the time of trial conceivably might have conferred jurisdiction and the filing of a second libel have been dispensed with as a mere matter of form. If the libel had originally contained an allegation of election to proceed in rem, perhaps the suggestion in the Carroll opinion that the filing of a second libel could be dispensed with as a mere matter of form could be accepted. We need not now decide. Since the libel contained no such allegation until the amendment added it, the only representative of the United States who had notice of the change was the United States attorney; notice that the libellants elected to proceed in rem was never given the Attorney General. It can hardly be doubted that had the libellants served a copy of the libel on the United States attorney but failed to mail one to the Attorney General, the statutory conditions for suing the United States would not have been satisfied. We think it equally necessary that both representatives of the Government should be notified when an amendment converts a libel in personam into a libel in rem. It is urged that the allegation of an election to proceed in rem is of no consequence, since the United States could not have altered its position because of it. We do not agree. Conceivably the allegation might have altered the Government's conduct; for example, the Attorney General might wish to designate one of his assistants to take part in the trial, if he knew that an in rem liability were asserted, although quite content to leave defense of the suit to the United States attorney if in personam liability only were involved. But whatever the reason for requiring service by mail on the Attorney General, the statute required an election to proceed in rem to be stated in the libel and required a copy of

---

6 There is a finding that the vessel was within the territorial waters of the United States from "February 23, 1947 to the date of trial." This seems to go somewhat beyond the stipulation that she "returned to the United States" on February 23, 1947, but as the finding has not been questioned by the appellee we will assume that it is correct.

7 Since he was not, the venue of the suit was wrong. In the case at bar the venue provisions are satisfied, since three of the libellants are residents of the eastern district. See 46 U.S.C.A. § 742.

the libel to be mailed to the Attorney General. As he never was given notice that the libellants were proceeding in rem, a majority of the court do not think that service of the amended libel could be dispensed with as merely formal. See Abbott v. United States, D.C.S.D.N.Y., 61 F.Supp. 989, 992; cf. Grant v. U. S. War Shipping Administration, D.C.E.D. Pa., 65 F.Supp. 507, 510. Consequently the Blamberg case was correctly held to be controlling.

Decree affirmed.

FRANK, Circuit Judge (dissenting in part).

I disagree with respect to affirmance of the decree in so far as it dismissed the action in rem.

1. In Carroll v. United States, 2 Cir., 133 F.2d 690, 692, 693, we recently said (per Judge Learned Hand) in a well-considered dictum that, notwithstanding the ship was not within the United States when the action commenced and not overlooking Blamberg v. United States, 260 U.S. 452, 43 S.Ct. 179, 67 L.Ed. 346, it would be enough to sustain jurisdiction in rem against the United States that the ship was within the United States at the time of trial, "since the filing of a second libel would be a mere matter of form." It would indeed constitute a formality. For there need be, and can be, no attachment of a ship belonging to the United States. Libellant—whether the suit be in personam, in rem, or both—need merely serve a copy of the libel on the United States Attorney, and mail a copy to the Attorney General. Here appellant had given such notices to both the United States Attorney and the Attorney General. And here the ship was within both the United States and the district nine times before the trial began.[1]

My colleagues, however, stress the fact that the libel as originally filed, did not contain an allegation of an "election" to proceed in rem as well as in personam.[2] But my colleagues concede that, on the first day of trial, the libel was amended to include such an allegation. To what seems to me the obvious suggestion that the addition of this allegation could have had no practical effect on the United States, because it could not have altered its position

---

[1] The parties filed a stipulation which reads as follows:

"Stipulation Entered Into Between the Parties Showing the Dates When S. S. Tubul Arrived and Departed from the Port of New York—

| Voy. No. | Date of Arrival at New York | Date of Departure from New York |
|---|---|---|
| D-4 | March 20, 1945 | Apr. 12, 1945 |
| E-1 | June 27, 1945 | July 13, 1945 |
| E-2 | Sept. 24, 1945 | Oct. 23, 1945 |
| E-3 | Jan. 20, 1946 | Jan. 31, 1946 |
| E-4 | Apr. 20, 1946 | May 8, 1946 |
| F-1 | July 18, 1946 | July 30, 1946 |
| F-2 | Oct. 21, 1946 | Oct. 27, 1946 |
| F-3 | Jan. 9, 1947 | Jan. 14, 1947 |
| F-4 | Feb. 23, 1947 | Returned to USA |

It is further stipulated that S.S. Tubul was not in the port of New York or any territorial waters of the United States at the time the Libel was filed but was moored to a pier at Valparaiso."

The trial court expressly found that the ship was present in the district from February 23, 1947 "to the date of trial." This finding is, I think, supported by the stipulation between the parties showing the dates when the S.S. Tubul arrived at, and departed from, the Port of New York. The stipulation contains three columns, headed "Voy. No.," "Date of Arrival at New York" and "Date of Departure from New York." The last entry lists under these headings in the same order, "F-4," "February 23, 1947," and "Returned to USA." The inference reasonably to be drawn from this last entry is that from February 23, 1947, the last date of arrival in New York, to April 23, 1947, the first day of the trial, when the stipulation was received in evidence as an exhibit, the Tubul had remained in the Port of New York. The libel was amended on April 23, to add the elective words. The stipulation is undated, but appears to have been agreed to when it was offered in evidence; accordingly, absent evidence to the contrary, we should assume that the vessel did not leave the district in the interval from February 23 to the time of trial. This conclusion is aided by the so-called "presumption" of the continuance of a state of facts for a span of time reasonable in the circumstances. It is notable that appellee does not assert that the finding is erroneous. Were it to do so, we should, at most, remand for further evidence on this point.

[2] "Election," in this context, does not mean an exclusive choice, since a libellant may, in one suit, sue the United States both in rem and in personam.

as a consequence, my colleagues make this reply: No notice of this amendment was given to the Attorney General; had he been notified that libellants were asserting an in rem liability, he might (say my colleagues) have wished "to designate one of his assistants to take part in the trial, although quite content to leave defense of the suit to the United States attorney if an in personam liability were involved." My colleagues do not—and I think cannot—explain why the Attorney General is more concerned with the defense of an in rem than with an in personam action, since the outcome of the suit, if a libellant wins, is precisely the same in either kind of action.

Accordingly, I think my colleagues' decision rests on the sheerest formality, and is therefore out of line with pertinent Supreme Court decisions: In Nahmeh v. United States, 267 U.S. 122, 125, 126, 45 S.Ct. 277, 69 L.Ed. 536, the Court (rejecting a contrary view expressed by this court) said "that the rule as to a strict construction of the language of statutes providing for suits against the United States" was inapplicable to the Suits in Admiralty Act, the "liberal provisions" of which "should not be interpreted in a restricted * * * sense." See also Canadian Aviator, Ltd. v. United States, 325 U.S. 215, 222, 65 S.Ct. 639, 89 L.Ed. 901.[3] With such admonitions I think we should not treat a person suing the United States under that Act far less liberally than if the respondent were a private person. Apposite therefore is F. E. Grauweiler Transport Co. v. Exner Sand & Gravel Corp., 2 Cir., 162 F.2d 90, 92, where we held that a libel in rem may be maintained against a privately-owned vessel even if it is seized while an appeal is pending. As, in an in rem suit against the United States, no seizure is permitted, the amendment of the libel, which is the substitute for seizure, should suffice.

My colleagues' suggestion that the Attorney General, if notified of the amendment, might have desired to designate one of his assistants is, in this case, especially dubious in the light of the following: Counsel for appellee conceded at the oral argument in this court that the defense has been and is being conducted only nominally on behalf of the United States and by the United States Attorney. Joined with him are lawyers who admittedly are acting for the Chilean Line or the Chilean government; for, under the express terms of the charter from the United States, the charterer and sub-charterer are obligated to the United States to pay any judgment which appellant may recover against the United States. It follows that the Attorney General had no interest in this suit.

2. This fact as to the real but hidden respondent has further significance. As the lawyers for the Chilean Line (or the Chilean government) were actually conducting the defense, we may justifiably assume that they prepared and filed the answer to the libel (although it bore not only their name but also that of the United States Attorney). That answer, as it stood until the opening of the trial, expressly admitted the "admiralty and maritime jurisdiction of the United States," and the jurisdiction of the court below; it contained no reference whatever to the charter. When, on April 23, 1947, the trial opened, for the first time the answer was amended (1) to allege the existence of the charter by way of defense to an in personam action and (2) to deny jurisdiction in rem. But, by that time, the statute of limitations had run against the Chilean Line and the Chilean government. The existence of the charter destroyed the in personam claim against the United States. Had the answer sooner disclosed the charter, appellants, before trial and during one of the nine occasions when the ship was within the district,[4] could have amended the libel to add the talismanic words and could then have notified the Attorney General.[5]

I do not suggest that, because of these facts, the existence of the charter should be disregarded as a defense to the in per-

---

[3] Cf. Schnell v. United States, D.C., 69 F.Supp. 877, 879.

[4] See the stipulation quoted in footnote 1, supra.

[5] Appellee, in oral argument, contended that the existence of the demise charter was known to appellants when this suit was begun on April 13, 1945. In sup-

sonam action. I do believe that the strategem of belatedly asserting the charter should not be permitted to defeat the action in rem. I think that, as a condition of allowing appellee to amend its answer at the trial to set up the charter, appellants should have been granted leave to amend their libel nunc pro tunc as of the date of its filing. We set back the clock if we reward procedural wiles. "It has always been the practice," says Benedict,[6] "in American admiralty courts * * * never to allow a party to overcome his adversary by the mantraps and spring guns of covert chicanery, or by the surprises and technicalities of mere pleading and practice." Even if the defense to the in rem action were actually asserted on behalf of the United States, I would think my colleagues were stretching it too far. Thus to stretch it to aid others, who cunningly employ it as here, is, I believe, peculiarly unjustified.

I would, therefore, reverse the order, in so far as it dismissed for lack of jurisdiction in rem, and remand for a decision on the merits.

port of this contention, appellee refers to appellee's letter of March 28, 1945, addressed to the Chilean Line, notifying the latter of appellants' intent to hold it liable.

This letter will not serve that purpose.

For, since the bill of lading was signed by the Chilean Line as agent for the ship's master, it was not unnatural that appellants should notify the Chilean Line.

[6] Benedict, Admiralty (6th Ed.1940) § 335; see also § 223.